ST. LOUIS, K. C. & C. R. CO. v. WABASH R. CO. et al.

(Circuit Court of Appeals, Eighth Circuit.   April 3, 1907.)

No. 2,426.

**1. RAILROADS—RIGHT OF WAY—MEANING.**

The term, "right of way," when used to describe the real estate of a railroad company, ordinarily signifies the entire strip of land which the corporation has found it necessary or convenient to acquire the right to use for railway purposes, and it is not limited to the specific part thereof secured for used for its main track or other particular improvements.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, §§ 204-206.]

**2. JUDGMENT—CONSTRUCTION—EVIDENCE.**

When the terms of a decree are plain and free from ambiguity, their ordinary meaning and effect may not be lawfully extended or contracted by construction, in the absence of proof to a reasonable certainty that such was the purpose of the court, for the legal presumption is that the judge carefully expressed his deliberate intention therein.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 30, Judgment, § 967.]

**3. SAME—PRESUMPTION.**

The absence from a decree of any limitation or exception to general terms of known significance raises a persuasive legal presumption that the court intended to make none.

**4. SAME—CONCLUSIVENESS—MATTERS CONCLUDED.**

In a second suit between the same parties or their privies upon the same cause of action not only every matter offered, but every admissible matter which might have been offered to sustain or defeat, in whole or in part, the cause of action, is rendered res adjudicata by a former judgment upon the merits.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 30, Judgment, § 1241.]

**5. EQUITY—DECREE—ENFORCEMENT—CONDITIONS.**

A court of equity may condition its decree for the enforcement of a former decree for the continuous use of a right of way or of terminal facilities by equitable terms, or may refuse to enforce it, where subsequent to the entry of the original decree such radical changes in the situation, rights, or relations of the parties have been wrought that equity demands such terms or forbids its enforcement.

But, in the absence of such changes, the original decree concludes the rights and remedies of the parties, and it must be enforced.

**6. RAILROADS—RIGHT OF WAY—DECREE—CONSTRUCTION.**

In 1886 the Circuit Court rendered a decree that the Colorado Company should enjoy the joint and equal use of the "right of way, tracks, side tracks, switches, turn-outs, turntables and other terminal facilities" of the Wabash Company between the north line of Forest Park and Eighteenth street, in the city of St. Louis, on reasonable terms fixed therein.

*Held:* (1) This decree entitled the Colorado Company to the joint use of the entire strip of land between the north line of the park and Eighteenth street which the Wabash Company had acquired the right to use for railway purposes at the date of the decree and of all the tracks, side tracks, turn-outs, turntables, and other terminal facilities thereon.

(2) That decree was equitable, and, in the absence of proof of such a change of conditions since its entry as would render its enforcement unjust, the Colorado Company is still entitled to the joint use of this entire strip and of all the tracks, side tracks, switches, turn-outs, turntables, and other terminal facilities of the Wabash Company which are now upon said strip.

(3) But the Colorado Company is not entitled under that decree to the use of the industrial tracks, land or other railway facilities of the Wabash

152 F.—54

Company outside the limits of that strip, the use of which it had acquired at the date of the decree of 1886.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, §§ 204–206.]

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the Eastern District of Missouri.

W. F. Evans and Frank Hagerman (E. S. Robert and M. A. Low, on the brief), for appellant.

J. L. Minnis (Wells H. Blodgett, C. N. Travous, and H. S. Priest, on the brief), for appellee Wabash Railroad Company.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

SANBORN, Circuit Judge. On December 31, 1886, upon a petition of intervention in the suit to foreclose the mortgages upon the Wabash, St. Louis & Pacific Railway Company, the court below rendered a decree to the effect that the St. Louis, Kansas City & Colorado Railway Company should have the joint use of the "right of way, tracks, switches, side tracks, turn-outs, turntables and other terminal facilities of the Wabash Railway Company between the north line of Forest Park and Eighteenth street in the city of St. Louis," and that for this use it should pay .6 per cent. per annum upon $500,000, one-half of the value of this property, and its proportion of the cost of its maintenance upon a wheelage basis. The Wabash Company appealed from this decree, and it was affirmed by the Supreme Court. Central Trust Co. v. Wabash, St. Louis & Pacific R. Co. (C. C.) 29 Fed. 546; Joy v. St. Louis, 138 U. S. 1, 11 Sup. Ct. 243, 34 L. Ed. 843.

Eighteenth street runs north and south. The Union Station is located upon the west side of this street. The east line of Forest Park is about three miles west of Eighteenth street. At the time this decree was rendered the Wabash, St. Louis & Pacific Railway Company owned a strip of land which varied in width from 30 feet to more than 200 feet, and which extended from Eighteenth street to the east line of the park, and it also had an easement for the passage of its trains and engines upon a strip of land 42 feet wide through the park from the east side to the north side thereof. It had constructed and was operating a main track, side tracks, switches, and terminal facilities upon this property. Under this decree the Colorado Company entered upon, and continued in the joint use of, this main track and some of the side tracks, switches, and terminal facilities until 1902, when the Wabash Railroad Company, which had succeeded to the rights of the Wabash, St. Louis & Pacific Railway Company, limited its use to that necessary for the ingress and egress of its trains to and from the station over the main track and the side tracks requisite for their passage. Thereupon the Colorado Company applied to the court for an order that the Wabash Company be required to permit it to use all the terminal facilities of that company between the north line of the park and Eighteenth street, including its tracks, switches, turn-outs and turntables. Issue was joined, testimony was taken, and after a final hearing the court adjudged that the Colorado Company was entitled, under the terms of the original decree, to the joint use of the tracks and rail-

way facilities of the Wabash Company upon that strip of land upon which the main track of the Wabash Company was laid 42 feet in width through the park and only 28 or 30 feet in width from the east line of the park to Eighteenth street, and to the use of none of the other terminal facilities of the latter company. Central Trust Co. v. Wabash, St. Louis & Pac. R. Co. (C. C.) 144 Fed. 476. This decree is challenged by the appeal. The Colorado Company asserts, and the Wabash Company denies, that the "right of way" meant by the original decree was the entire strip then owned by the Wabash Company between the east line of the park and Eighteenth street; and the real question in this case is whether the joint use decreed to the Colorado Company in 1886 extended to the entire strip and the railway facilities thereon, or was limited to that portion thereof 28 to 30 feet wide upon which the main track had been built and to the improvements upon this narrower strip.

The parts of the decree pertinent to this issue read in this way:

"And the court doth further find, order, adjudge, and decree that the equities are with said interveners and said interveners are entitled to the relief as prayed for in their amended bill of complaint herein. And the court finds, adjudges, and decrees that the basis of compensation to be paid by the intervener, the St. Louis, Kansas City & Colorado Railroad Company, for the use of the right of way and tracks, side tracks, switches, turn-outs, turntables, and other terminal facilities of said Wabash, St. Louis & Pacific Railway Company at and between the north line of Forest Park and Eighteenth street, in the city of St. Louis, shall be the value of said right of way, tracks, and other property last described as determined by the master in his said reports, and the compensation to be paid shall be, per annum, 6 per cent. on one-half of the value of said right of way, tracks, side tracks, switches, turn-outs, turntables, and other terminal facilities, and the said one-half value is and shall be taken to be $500,000. * * * And the court doth further order, adjudge, and decree that the running of all trains, engines, or cars of said intervener, the said St. Louis, Kansas City & Colorado Railroad Company, over said right of way and tracks and the use of said right of way, road, terminal facilities, and other property specified as aforesaid, shall conform to the rules and regulations now in force and such other reasonable rules and regulations as may hereafter be adopted. * * * And the court doth further order, adjudge, and decree that in all respects subject to the terms of this decree the said railroad company, intervener, shall enjoy the equal use and benefit of said right of way, tracks, switches, side tracks, turn-outs, turntables, and other terminal facilities with said Wabash, St. Louis & Pacific Railway Company, or its said receivers, and the said Wabash, St. Louis & Pacific Railway Company, * * * and all persons claiming by, through, or under them, * * * are hereby perpetually enjoined and restrained from in any manner refusing to permit the said intervener * * * from using with it for their engines and cars (loaded or empty) the said right of way, tracks, switches, side tracks, turn-outs, turntables, and other terminal facilities of said Wabash, St. Louis & Pacific Railway Company between the north line of said Forest Park and said Eighteenth street. * * * And the said intervener, the St. Louis, Kansas City & Colorado Railroad Company, by its officers, agents, and employés, and each of them, is hereby authorized and permitted with its right of way, road, tracks, and property, engines, and cars, loaded or empty, to make connection with said Wabash, St. Louis & Pacific Railway Company at the north line of said Forest Park and to use the said right of way, tracks, switches, side tracks, turn-outs, turntables, and other terminal facilities of said Wabash, St. Louis & Pacific Railway Company, or any one claiming by, through, or under it as to the same, between the north line of said park and Eighteenth street, on the terms, in the manner and subject to the regulations in this decree set forth in and for the transaction of the business and in the operation of the road of said St. Louis, Kansas City & Colorado Railroad Company, its successors or assigns."

The ordinary signification of the term "right of way," when used to describe land which a railroad corporation owns or is entitled to use for railroad purposes, is the entire strip or tract it owns or is entitled to use for this purpose, and not any specific or limited part thereof upon which its main track or other specified improvements are located. Joy v. St. Louis, 138 U. S. 1, 44, 45, 46, 11 Sup. Ct. 243, 34 L. Ed. 843; Territory of New Mexico v. United States Trust Co., 172 U. S. 171, 181, 182, 19 Sup. Ct. 881, 43 L. Ed. 413; Id., 174 U. S. 545, 546, 19 Sup. Ct. 784, 43 L. Ed. 1079; Chicago & Alton R. Co. v. People, 98 Ill. 350, 356, 357; Lake Erie & W. R. Co. v. Middlecoff, 150 Ill. 27, 37 N. E. 660, 663; Pfaff v. Terre Haute & I. R. Co., 108 Ind. 144, 148, 9 N. E. 93, 95.

To one ignorant of the origin and history of the rights of the contending parties and unaware of the persuasive arguments of counsel, the reading of this decree would suggest no doubt that it granted the joint use of the entire strip owned by the Wabash Company and of all the railroad facilities thereon between the east line of the park and Eighteenth street. Upon its face there is no ambiguity in its terms. They suggest no limitation or exception, and, when the terms of a decree are plain and clear, their ordinary meaning and effect may not be lawfully contracted or extended, unless it appears with reasonable certainty that such was the purpose of the court; for the legal presumption is that the judge carefully and thoughtfully expressed therein his deliberate intention. The Wabash Company, therefore, assumed no light burden when it essayed to prove that the court intended by this decree to grant to the Colorado Company the joint use of a strip only 30 feet in width out of the wider strip the Wabash Company owned between the east line of the park and Eighteenth street. Its contention in this respect is based upon the pleadings and proceedings in the intervention and upon the earlier relations of the parties and their predecessors in interest, and a brief statement of some of the salient facts which condition it is essential to its understanding, but reference is made to the opinion of Mr. Justice Brewer who rendered the original decree, in 29 Fed. 546, and to the opinion of the Supreme Court in Joy v. St. Louis, 138 U. S. 1, 11 Sup. Ct. 243, 34 L. Ed. 843, for a detailed statement of the origin and history of the rights and litigation of these parties.

On August 11, 1875, the St. Louis County Railroad Company owned the title of or the easement to use about 12 isolated strips of land, which varied in width and which now constitute parts of the entire strip of the Wabash Company east of the park, and it claimed a right of way through the park. It had laid out, and it intended to build over these tracts, a railroad from the north line of the park to Eighteenth street. The St. Louis, Kansas City & Northern Railway Company, the predecessor in interest of the Wabash Company, was operating its railroad, and was anxious to extend it through the park to the Union Station along this line. Thereupon, on this 11th day of August, 1875, and as a part of the same transaction, these corporations made an agreement, the County Company made a deed, and the two companies and the commissioners of Forest Park made a

tripartite agreement, whereby the County Company agreed to, and did, convey to the Kansas City Company a strip 28 feet in width through each of its tracts between the east line of the park and Grand avenue, a strip 30 feet in width through each of its tracts between Grand avenue and Eighteenth street, and an undivided half of its right of way through the park, the park commissioners assured to the County Company a right of way through the park 42 feet in width, the County Company covenanted by the ninth paragraph of the tripartite agreement to "permit under such reasonable regulations and terms as may be agreed upon other railroads to use its right of way through the park and up to the terminus of its road in the city of St. Louis upon such terms and for such fair and equitable conpensation to be paid therefor as may be agreed upon by such companies," and the Kansas City Company, as was subsequently held in 138 U. S. 1, 11 Sup. Ct. 243, 34 L. Ed. 843, accepted its right of way through the park subject to the condition in the ninth paragraph of the tripartite agreement that this right of way and also the right of way it might acquire east of the park to Eighteenth street might be used by other railroads.

It is important to note and bear in mind the times when and the sources from which the Kansas City Company and its successor, the Wabash Company, acquired the title to the entire strip east of the park which it owned when the decree of 1886 was rendered, and upon which it had then constructed and was operating its railroad. The isolated tracks owned by the County Company in 1875 extended over less than one-half the distance between the park and Eighteenth street. The Wabash Company derived its title to strips 28 or 30 feet in width through these tracts under the County Company's deed of August 11, 1875. It secured the remainder of them under a deed to the Kansas City Company made in 1878. It acquired tracts between these isolated lands from third parties by purchase and condemnation, and these tracts were of varying width and covered more than one-half of the length of the entire strip. Thus this strip was made up (1) of strips acquired in 1875, 28 or 30 feet in width, through the isolated tracts then owned by the County Company which covered less than half its length (2) of the remainder of these isolated tracts deeded to the Kansas City Company in 1878, and (3) of the tracts of land of varying width between these isolated tracts. The court below seems to have overlooked this fact, for it states, as one of the controlling reasons for its conclusion that the right of way of the decree was only 28 or 30 feet in width east of the park, that:

"At the time the original decree was rendered the Wabash, St. Louis & Pacific Railway Company owned a right of way through Forest Park 42 feet wide, and a right of way 28 or 30 feet wide from Forest Park to the Union Depot at Eighteenth street in St. Louis, Mo. It derived all this right of way through an instrument of writing spoken of in all this litigation as the 'tripartite agreement.' That this last statement is true is distinctly shown by the language of the Supreme Court of the United States in 138 U. S., at page 43, 11 Sup. Ct., at page 255, 34 L. Ed. 843, in these words: 'The tripartite agreement is the only muniment of title under which the appellants now enjoy the right of way.'"

The facts were, however, that at the time of the original decree the Wabash Company not only had a right of way 28 or 30 feet in width east of the park, but a wider one; that it neither derived all of this right of way nor all of the alleged right of way 28 or 30 feet in width from the tripartite agreement, but it derived the former from the three sources which have been specified, a portion of the latter from the deed of the County Company of August 11, 1875, the agreement of the two corporations of that date and the tripartite agreement, but the larger portion from third parties by subsequent purchase and condemnation of the lands between the isolated tracts owned by the County Company at that time; and that the tripartite agreement conveyed no title to, but imposed a condition upon the use of the Wabash Company's right of way and property east of the park. The statement of the Supreme Court that "the tripartite agreement is the only muniment of title under which the appellants now enjoy the right of way" was true only because it was their only muniment of title to that portion of the right of way through the park. The park commissioners never had any title to any of the property east of the park, and they could have granted none. They claimed to have, and by the tripartite agreement they granted, the right of way through the park upon the condition that their immediate and remote grantees would permit its use and the use of their right of way east of the park to Eighteenth street by other railroads which might desire to enter the city over it. But the muniments of their title to the property east of the park were their deeds from former owners, and the tripartite agreement, instead of being a muniment of title to it, was an incumbrance upon it. Joy v. St. Louis, 138 U. S. 39, 40, 41, 42, 11 Sup. Ct. 243, 34 L. Ed. 843.

In 1886 the Colorado Company filed its intervening petition and its amended petition, alleged that it was one of the "other railroads" which the County Company by the ninth paragraph of the tripartite agreement covenanted to permit to use its right of way through the park and up to the terminus of its railroad in the city of St. Louis, that the Wabash Company held its right of way from the north line of the park to Eighteenth street subject to the condition expressed in that covenant, and prayed that the petitioner might enjoy the joint and equal use of it. The Wabash Company answered, among other things, that the alleged covenant and condition attached to those portions of the isolated tracts owned by the County Company in 1875, which it still held after it had conveyed the 28 and 30 feet strips to the Kansas City Company, and that those strips and the intermediate tracts which it had obtained by purchase and condemnation from third parties were exempt from them. But the court held otherwise, and rendered the decree that the Colorado Company should "enjoy the equal use and benefit of the right of way and the tracks, side tracks, and switches, turn-outs, turntables, and other terminal facilities of the Wabash Company between the north line of Forest Park and Eighteenth street." A sufficient statement of the origin and history of the rights of the parties and of the previous litigation has now been made to enable us to consider intelligently the reasons

urged by counsel for the Wabash Company why this decree should be construed to mean the right of way of the Wabash Company through the park, its right of way only 28 or 30 feet in width east of the park, and its railway facilities thereon.

Their first contention is that the description in the decree of the right of way and railway facilities between the north line of the park and Eighteenth street must be interpreted to mean "that strip of land which railways take upon which to construct their roadbed," and hence that on which the Wabash Company had constructed its roadbed in 1886, because, in the absence of that construction, no land or property of the Wabash Company could be found between the north line of the park and Eighteenth street, for the reason that the two lines run at right angles. But this argument just as conclusively demonstrates that the right of way of the decree must be interpreted to have its ordinary signification, the entire strip which the Wabash Company owned or had acquired the right to use for railroad purposes between the north line of the park and Eighteenth street and the tracks and railway facilities thereon, and it fails to advance the investigation.

The second argument is that the right of way east of the park specified in the decree is limited by the prayer of the amended bill and this sentence in the decree:

"And the court doth further find, order, adjudge, and decree that the equities are with the interveners and said interveners are entitled to the relief as prayed for in the amended bill."

The prayer of the amended bill was that the Wabash Company be enjoined from preventing the Colorado Company "from using said right of way of said Wabash, St. Louis & Pacific Railway Company" between the north line of the park and Eighteenth street, "including the tracks of said Wabash, St. Louis & Pacific Railway Company between" those lines, and for general relief. A careful search of this bill has disclosed nothing which limits "said right of way" mentioned in the prayer to 28 or 30 feet in width, but has brought to light a very clear indication that this right of way was wider, and that its width was not indicated otherwise than by the ownership of the Wabash Company. The interveners allege in this bill that on August 11, 1875, the St. Louis County Company had acquired a right of way 42 feet in width through the park and was the owner of a large part of such right of way east of the park; that it agreed on that day to convey the joint use of its right of way through the park and a strip 30 feet wide off the south side of its right of way east of the park to the Kansas City Company; that by the tripartite agreement its right of way through the park 42 feet in width was assured to it on condition that it should permit other railroads to use its right of way through the park and up to the terminus of its road in St. Louis; that on December 21, 1878, the Kansas City Company became the owner of all the remainder of the County Company's right of way and property between the park and Eighteenth street; and that in 1879 the Wabash Company succeeded to the Kansas City Company, and since that date "has used, enjoyed, owned, and operated all the

property formerly owned by said St. Louis, Kansas City & Northern Railway, including the railroad, and right of way from said Union avenue to Eighteenth street." These averments demonstrate that "said right of way" of the Wabash Company east of the park for the joint use of which the Colorado Company prayed was more than 30 feet in width, because they assert that the County Company owned parts of it in 1875; that it agreed to convey 30 feet in width off the south side of these parts on August 11th in that year; that the Kansas City Company acquired the remainder of them in 1878; and that the Wabash Company owned and operated all of them in 1886. The right of way east of the park described in the decree was not, therefore, limited to 30 feet in width by its reference to the amended bill or its prayer (1) because these contain no such limitation, but describe a wider right of way; and (2) because the subsequent terms of the decree which proceed to grant specifically the relief prayed in the bill, which constitute the most cogent evidence of the intention of the court, contain no such limitation.

It is next said that the stipulations, testimony, and opinions in the intervention limit the width of the right of way of the decree east of the park to 30 feet. In support of this contention, attention is called to a stipulation in that proceeding to the effect that the property conveyed by the deed of August 11, 1875, was marked in blue on the Chart A and was 30 feet in width as a rule. But this admission fails to indicate that the right of way of the Wabash Company in 1886, parts of which had been derived from two other sources, was not wider, and the parties made other stipulations to the effect that the tracts marked "Grover" on Chart A, which constituted the remainder of the isolated tracts of the County Company after it had conveyed the 28 and 30 feet strips, were subsequently obtained by the Kansas City Company, and "that the several lots and tracts of land now constituting defendant's right of way between Forest Park and the Union Depot [many of which were more than 30 feet in width] not indicated in blue or marked 'Grover' on Chart A, were obtained by the St. Louis, Kansas City & Northern Railway Company from divers persons by purchase and condemnation," an admission inconsistent with the claim that the Wabash Company's right of way east of the park was only 30 feet wide. When these various stipulations are read together, they fail to define or limit the width of the right of way east of the park otherwise than by the ownership of the Wabash Company.

In the course of the proceedings in the intervention, the value of the right of way and of the railway facilities thereon became an issue in determining the basis of the compensation to be paid by the Colorado Company for the use it sought. That company produced its chief engineer, who testified that he had constructed the railroad of the Kansas City Company from the north line of the park to Eighteenth street, and that its right of way east of the park was 30 feet wide, and it produced witnesses who testified that the value of this 30-feet strip without the improvements thereon was $265,000. On the other hand, the witnesses for the Wabash Company testified that

the value of all the property of that company between the north line of the park and Eighteenth street, including its tracks, side tracks and other appurtenances necessary for doing the railway business, was from $1,250,000 to $1,500,000, and the master found the value to be $1,000,000. This appraisal was subsequently approved by the court.

Perhaps the most persuasive argument of counsel for the Wabash Company is that Emerson, the engineer of the Colorado Company, testified that the right of way east of the park was 30 feet wide, that there were occasional places where there was a side track upon it, and that there could be but one track besides the main track upon this 30 feet; that the master found that the evidence of Emerson and of Lincoln (who was the engineer of the Wabash Company and who testified that the greatest width of the roadbed through the park was 38 feet, and that he did not know that he could state the width of the right of way from the park to Eighteenth street, that it was of irregular width at different places) showed that, owing to the construction of the Wabash Road and its side tracks and switches, another track could not be built on the right of way throughout the whole distance, although it might be on some parts thereof; and that, as the Colorado Company could not construct another railroad over the entire length of this right of way, it was entitled to use the tracks and railway facilities of the Wabash Company thereon, and Judge Brewer, when he was discussing in his opinion the contention of the Wabash Company that by the tripartite agreement the Wabash Company was required to permit other railroads to use its right of way only and was not bound to allow them to use its tracks or roadbed, said:

"The language of the ninth paragraph, under which, as before noticed, interveners must claim, is that the party of the second part shall permit other railroads to use its 'right of way.' Now, the term 'right of way' has a twofold signification. It sometimes is used to describe a right belonging to a party, a right of passage over any tract, and it is also used to describe that strip of land which railroad companies take upon which to construct their roadbed. Obviously, in this paragraph it is used in the latter sense. Through both of these contracts the term 'right of way,' 'track,' and 'roadbed,' frequently appear, and in all cases the term right of way is used as descriptive of the strip above referred to. * * * So the county road conveyed to the Kansas Road outside of the park a strip either 30 or 28 feet in width for its right of way. My thought, at first, was that the interveners could only claim a right to use so much of this right of way as was not in fact occupied by the track of the Wabash, and that all that was intended by this ninth paragraph was to permit other railroad companies to occupy and use so much of the Kansas Road's right of way as it did not itself occupy and use; but after reflection on the argument of counsel I have been led to the conviction that this was too narrow a construction, and was not the real intent of the parties. The master, in his report, shows that the entire right of way is occupied by tracks and sidings, so that there is no room for another and independent track, and, as there is nothing to show that this occupation has not been made in good faith, and to supply the needs of the Wabash Company, if my first interpretation had been correct, the interveners would plainly be without any rights."

If the learned judge had been considering or deciding the width of this right of way or had been endeavoring to give an accurate and comprehensive definition of the term "right of way" when he delivered this

portion of his opinion, it might have indicated that he deemed the right of way east of the park 28 or 30 feet wide. But statements in the opinions of courts are authoritative upon the issue pending for decision and under consideration and upon that alone. Judge Brewer was distinguishing the right of way which consists in the right to travel over property from the right of way which consists of the strip of land acquired by a railway company for its railroad tracks and facilities. He was not deciding whether a right of way of the latter class includes land taken by a railroad company which is necessary and convenient for railroad · purposes including tracts for roundhouses, turntables, turn-outs, and switches, or was limited to "that strip of land which railroad companies take upon which to construct their roadbed." If he had been determining this issue, there can be no doubt what his decision would have been. He was not determining what the width of the right of way of the Wabash Company was, but whether or not the Colorado Company was entitled to use the tracks and other railroad facilities upon that right of way. For this reason, he did not attempt to set forth and did not accurately state the origin or extent of that right. His declaration that "the county road conveyed to the Kansas Road outside of the park a strip either 30 or 28 feet in width for its right of way" was sufficient for the discussion of the issue he was then considering. But it was inaccurate, and would have been misleading in the determination of the width of the Wabash Company's right of way, because, as we have seen, the county road conveyed only isolated strips of land which in the aggregate covered less than 50 per cent. of its length, and a still smaller percentage of its area. So his statement that the master's report showed "that the entire right of way is occupied by tracks and sidings, so that there is no room for another and independent track," is a declaration not that the entire right of way was thus occupied, but, as the master's report was, that it was so occupied at some places that there was no room for another and independent track the entire length of it. This conclusion appears to have been as true of the entire strip as it was of the 30 feet, so that there is nothing in this statement in Judge Brewer's opinion or in the master's report or in the testimony upon which it is based to prove with any reasonable certainty that the decree which he subsequently rendered, and which on its face subjects the entire strip and all the railway facilities thereon then owned by the Wabash Company to the joint use, did not express his deliberate conclusion, or that he intended to limit that use to a part of this strip 30 feet in width and the tracks thereon.

Counsel for the Wabash Company review the foregoing facts, and insist that the Colorado Company is estopped from claiming that the decree gives it the joint use of more than 30 feet in width east of the park (1) by its amended petition, but the Colorado Company prayed in that petition for the use of a broader strip, the width of which was undefined, save by the limits of the strip then owned by the Wabash Company; (2) by the stipulation that the property conveyed by the deed of August 11, 1875, was 30 feet in width as a rule, but the parties made another stipulation that the tracts of varying width between the detached strips conveyed by that deed were also parts of the right of way

of the Wabash Company; (3) by the evidence of its witnesses that this right of way was only 30 feet wide, and that its value, without the improvements thereon, was only $265,000, and by the position of its counsel, stated in an objection to evidence offered by the Wabash Company of the value of all its real estate between the north line of the park and Eighteenth street and of the tracks and side tracks thereon and the other necessary appurtenances, that the Colorado Company was not asking for the use of these tracks, side tracks, or appurtenances, but for the use of the strip of 30 feet without them only. But no estoppel arose here because the Wabash Company secured an overruling of the objection and a disregard of the testimony and obtained a decree upon the opposite theory. The record discloses no act or omission of the Colorado Company before the decree, which estopped it from claiming the full benefit of it.

It is strenuously contended, however, that counsel for that company conclusively estopped it from securing the use of more than 30 feet in width of the property of the Wabash Company east of the park by the answer they made in their brief upon the appeal to the complaint of the Wabash Company that the decree was too broad. That complaint was:

"The court erred in entering a decree broader than the contract. Even if the ninth clause of the tripartite agreement was binding on the Kansas City Company, it only required it to permit other railroads to use its 'right of way,' and yet a decree was entered giving respondent the use of 'the right of way, tracks, switches, turn-outs, turntables, and other terminal facilities of the Wabash Company' at St. Louis. Again, the decree is not only broader than the contract, but it is broader than the prayer of the petition. The prayer of the petition is that the Colorado Company be permitted to use the right of way of the Wabash Company, 'commencing at the north line of said park, thence over said right of way to Eighteenth street in said city of St. Louis, by running its engines and cars over and upon said right of way, including the tracks of said Wabash Company between said points.' The contract only related to 'right of way.' The prayer of the petition was for the use of 'right of way and tracks,' and the decree not only gives them the use of the 'right of way and tracks,' but it subjects to the use of respondent the 'switches, side tracks, turn-outs, turntables, and other terminal facilities,' and even goes so far as to require the Wabash Company to keep those additional properties in repair for respondent's use. Therefore, no matter what view may be taken of the case in other respects, the decree was erroneous in two particulars: First, because it is broader than the covenant; and, second, because it is broader than the prayer of the bill. Both of these objections are elementary."

And the counsel for the Colorado Company answered it in these words:

"The contract permits other roads to use the tracks of the County and Kansas City Roads, and the decree gives the use of the tracks, including turntables and other terminal facilities of the Wabash Company on its right of way. The record shows that the width of the right of way of appellants at Tayon avenue or Eighteenth street, being the terminus of the road at the Union Depot, is about 40 feet. This is shown by Chart A, in evidence. The side tracks, turn-outs, etc., mentioned in the decree at the terminus, are upon this 40 feet, which is the right of way. Appellants have no depot of any kind, freight or passenger, to be used by any other road. The turntable, of course, is necessary for use of the tracks, as also the switching and sidings. Respondents, under the decree, could only use what the evidence shows the appellants had; hence there is nothing in the contention that the decree is broader than the provisions of section 9, or the prayer of the bill. * * * The record further

shows that the Union Depot Company take charge of all trains, and have side-track facilities for loading and unloading trains."

The most striking thing about these arguments is that counsel for the Wabash Company nowhere claimed that the decree was too broad because it granted the joint use of all its right of way east of the park upon the ground that the condition on which the decree was founded extended to a strip only 30 feet in width through it, but conceded that the grant of its entire right of way and tracks was admissible and objected only to the grant of the use of its switches, side tracks, turnouts, turntables, and terminal facilities. Nor did it object to the grant of this use upon the ground that these were not upon its right of way or upon the 30-foot strip, but upon the sole ground that, while the decree admissibly gave to the Colorado Company the joint use of its right of way and tracks, the grant of the use of its "switches, side tracks, turnouts, turntables, and other terminal facilities" was unwarranted. Nor do we find in the answer of the Colorado Company any concession or statement that the width of the right of way of the decree was 30 feet. On the other hand, it contains the counter assertion that it was about 40 feet in width at its eastern terminus, and that the side tracks, turnouts, etc., at this terminus were upon this 40 feet. An assertion that a right of way is 40 feet wide at one end cannot work an estoppel from insisting that it is more than 30 feet in width at that or any other point. The objection of the Wabash Company which has been under consideration was overruled by the Supreme Court, the decree was affirmed, and thereby the question whether or not the decree was too broad became res adjudicata.

This court has not failed to appreciate the facts that the public interest and the pecuniary interests involved in this litigation are important and permanent, and that the effect of its decision may reach far into the future. All the reasons suggested by the court below and by the Wabash Company why the decree of 1886 should be limited to, or construed to mean, a right of way 28 or 30 feet in width east of the park and the railway facilities thereon only, have been thoughtfully and deliberately considered, and their main arguments have been discussed. They have failed to convince with any certainty that such is the true meaning of the decree or that such was the intention of the judge who framed it or of the Supreme Court which affirmed it. On the other hand, the facts that the Colorado Company described, and prayed for the use of a wider strip in its amended bill; that the turntables described in the decree and some of the side tracks and turnouts were not upon the 30-foot strip; that the right of way at Eighteenth street was stated to be 40 feet in width in the Supreme Court; that no claim was ever made by the Wabash Company during the litigation which resulted in the decree that the use of the Colorado Company should be limited to a tract of less width than the entire strip then owned by the Wabash Company; that this entire strip was necessary or convenient, and was secured by the Wabash Company for its tracks, side tracks, and terminal facilities; that the ordinary significance of the term "right of way" under such circumstances is the entire strip procured for such purposes, and the plain and unlimited provision of the

decree that the Colorado Company shall enjoy the use "of said right of way, tracks, switches, side tracks, turn-outs, turntables, and other terminal facilities" of the Wabash Company between the north line of the park and Eighteenth street—cogently persuade that the true meaning of the decree and the actual intention of the learned jurist who rendered it was to adjudge to the Colorado Company the use of the entire strip then owned by the Wabash Company and the railway facilities thereon. And, when to these considerations are added the fact that the partial defense that the condition of the tripartite agreement which was the foundation of the intervention attached to only 30 feet in width of the wider strip which the Wabash Company owned was open to that company in that proceeding in both courts, and was never presented, and the indubitable rule of law that in a second suit between the same parties or those in privity with them upon the same claim or demand a judgment upon the merits is conclusive, not only as to every matter offered, but as to every admissible matter which might have been offered to sustain or defeat the claim or demand (Cromwell v. County of Sac, 94 U. S. 351, 352, 24 L. Ed. 195; Dickson v. Wilkinson, 3 How. 57, 61, 11 L. Ed. 491; Dimock v. Copper Co., 117 U. S. 559, 565, 6 Sup. Ct. 855, 29 L. Ed. 994; Commissioners v. Platt, 79 Fed. 567, 571, 572, 25 C. C. A. 87, 91, 92), there remains no legal or rational way of escape from that conclusion.

The evidence and arguments drawn from the acts and omissions of the parties since the decree of 1886, was rendered have been considered, but nothing has been discovered in them to avoid or modify this conclusion.

Finally, counsel contend that this is not a "hard and fast" decree; that the Colorado Company is applying to a court of equity to enforce it; that the court should not grant inequitable relief; and that any broader relief than that given by the decree challenged by this appeal would be of this character.

A decree for the joint use of railway facilities may be fair and just when rendered, and such radical changes may subsequently be wrought that its continued enforcement would work great injustice. A court of equity always has the power and the judicial discretion to refuse to compel inequity and to condition the relief it grants with the requirement that he who seeks equity shall do equity. If such changes in the situation, rights, or relations of these parties had occurred subsequent to the entry of this decree that its continued enforcement would be unjust, the courts would withhold their aid or condition it by new and equitable terms. But the original decree was conclusive of the rights and remedies of the parties at that time and thereafter until subsequent changes of conditions rendered some modification of the relief it granted just and equitable. It is to be interpreted and enforced in the light of the rules and principles of equity and of the opinions of the courts upon which it was founded. For example, the use granted to the Colorado Company is the surplus use, that use which the business of the Wabash Company does not require, and, as Judge Brewer said in the opinion upon which the decree is based, the time may come when that business will demand the entire use of the property, and the Colo-

rado Company's right to use it may entirely cease. Central Trust Co. v. Wabash, St. L. & P. R. Co. (C. C.) 29 Fed. 558. But there is no evidence in this case of any such requirement or of any change of conditions which now renders the original decree less just than when it was entered. Nor was it originally, nor is its enforcement now, inequitable or unjust. Questions of this nature have repeatedly received the consideration of this court, and its views upon them have been approved by the Supreme Court. Union Pac. Ry. Co. v. Chicago, R. I. & Pac. Ry. Co., 2 C. C. A. 174, 232, 234, 51 Fed. 309, 318, 319, 321; Union Pac. Ry. Co. v. Chicago, etc., Ry. Co., 163 U. S. 564, 585, 16 Sup. Ct. 1173, 41 L. Ed. 265; Union Pac. Ry. Co. v. Mason City & Fort Dodge Ry. Co., 64 C. C. A. 348, 358, 128 Fed. 230, 240; Union Pacific Co. v. Mason City, etc., Co., 199 U. S. 160, 171, 26 Sup. Ct. 9, 50 L. Ed. 134. In the case first cited we said:

"Courts cannot be blind to the fact that every railroad company cannot have entrance to our great cities over tracks of its own, or to the fact that railroad companies do, and every public interest requires that they should, make proper contracts for terminal facilities over the roads of each other."

And we sustained and enforced a contract of the Union Pacific Company to grant the surplus or waste use of its bridge and terminal facilities at Omaha and South Omaha to the Rock Island Company. In the Mason City and Ft. Dodge Case this court enforced a similar use of the same property by another railroad company under acts of Congress, and said in answer to the argument that the latter company might build its own bridge:

"The latter suggestion is unworthy of serious consideration. It is undoubtedly possible, but it is neither practicable nor advisable, either in the interest of the appellee or in the interest of the public whom it serves, that that company should invest the large amount of money that would be required to construct another bridge and to purchase a right of way through the city of Omaha, and that it should consequently impose upon the traffic of the country the tax that would be necessary to pay it a fair income upon such an investment."

It is undoubtedly possible for the Colorado Company to acquire the railway facilities in the city of St. Louis which it seeks under the decree of 1886 by purchase, condemnation, and construction or by a more expensive contract with the Wabash or with some other company, but such a proceeding would burden the traffic of the country with the tax necessary to pay a fair income upon the investment or the increased expense of the new contract. The Wabash Company has the use of the right of way and of railway facilities in the city of St. Louis a part of which its business does not require. It obtained it subject to a condition imposed by the park commissioners for the benefit of the city and of the citizens of St. Louis that the Colorado Company should enjoy this surplus use on reasonable terms. Those terms have been determined and have been approved by the highest court in the land. No change of conditions since the decree of 1886 was rendered has been proved which makes its enforcement oppressive, and it is just and equitable to it, to the public and to the Colorado Company that it should be enforced as it was rendered until some such change is wrought.

The conclusion is that the Colorado Company is entitled to enjoy the joint and equal use of the entire strip of land between the east line of the park and Eighteenth street which the Wabash owned or had acquired the right to use when the decree of 1886 was rendered, and of the tracks, side tracks, turn-outs, turntables, and terminal facilities now thereon. But it is not entitled to the use under that decree of any of the property, industrial, or railway facilities of the Wabash Company beyond the limits of that strip. Union Pac. R. Co. v. Mason City & Ft. Dodge R. Co., 199 U. S. 171, 26 Sup. Ct. 19, 50 L. Ed. 134.

The question whether or not equity demands the decree in this case to be conditioned by the requirement that the Colorado Company shall henceforth pay, in addition to the amount specified in the decree of 1886, 6 per cent. per annum upon one-half of the cost or value of the improvements which the Wabash Company has placed upon this right of way since 1886 or by any other requirement and questions pertinent to an accounting between the parties have not been considered, because there is no cross-appeal, and this decision does not foreclose the consideration and determination of these issues, if any, by the court below previous to the entry of its decree. Guarantee Co. v. Phenix Ins. Co., 59 C. C. A. 376, 124 Fed. 170.

The decree below is reversed, and the case is remanded to the Circuit Court with instructions to render a decree not inconsistent with the views expressed in this opinion.

HOOK, Circuit Judge (specially concurring). I concur in the reversal of the decree of the trial court, and also for the most part in what is said in the foregoing opinion. I do not, however, concur in the exclusion of the industrial tracks from the operation of the decree of 1886. These tracks are the usual and necessary features of railway terminals in a large city, and are as much a part thereof as the limbs are of a tree. They go with the right of way as appendages thereto, and are always so regarded. Their use is essential to the enjoyment of the rights awarded. In my opinion they are clearly within the spirit of the decree of 1886, and also by fair construction within its letter. The decree granted to the intervener the "right of way, tracks, switches, side tracks, turn-outs, turntables, and other terminal facilities of the Wabash Railway Company between the north line of Forest Park and Eighteenth street in the city of St. Louis." This is very broad language and it was repeatedly employed in the decree. That Judge Brewer intended to include such industrial tracks as were in existence when the decree was made also seems plain from his opinion (29 Fed. 559). The cost of their construction was included in the total cost upon which the percentage compensation to be paid by the intervener was based. Moreover, the consistent course of conduct of the parties for 13 years following the decree shows that they regarded them as being a part of the property the joint use of which was granted to the intervener. I am unable to see any persuasive reason for excepting them from the comprehensive enumeration of terminal facilities in the decree. That they extend beyond the side lines of the strip of land owned by the Wabash Company and upon the land of others seems to me to be a circumstance wholly immaterial and yet it must

be. the circumstance upon which their exclusion from the decree is made to depend. The Wabash Company owns these industrial tracks and operates them as part of its right of way and terminal facilities. Of what importance is it that they are in part upon public highways and the land of others under license instead of being wholly upon land owned by that company? If the latter condition existed, it would doubtless be conceded that they fell within the decree. The scope of the decree is therefore determined not by the character of the tracks and their relation to the right of way and terminal facilities as a whole with which the court was dealing but by the character of the title of the Wabash Company to the ground upon which the tracks are laid. It seems to me there has been a narrowing of the decree in this particular.

The case of the Union Pacific Company v. Mason City Company, 199 U. S. 160, 171, 26 Sup. Ct. 19, 50 L. Ed. 134, is not an authority for this construction of the decree. The court was there considering a claim of the Mason City Company for the use of the Union Pacific bridge across the Missouri river at Omaha, and its approaches. Naturally this would not include industrial tracks and switches. Indeed, when rightly regarded, the decision of the Supreme Court makes for a conclusion contrary to that reached by my associates. An act of Congress conferring in most general terms upon other railroad companies the right to cross the bridge at Omaha was held to give the Mason City Company the right not only to cross the bridge, but to use several miles of main and passing tracks of the Union Pacific in the cities of Omaha and South Omaha. The decision well serves to illustrate the liberality with which provisions of the kind we are now discussing are construed when public interests are involved.

Of course, the right to use industrial tracks laid since the decree of 1886 was rendered would require consideration of the subject of compensation. The compensation specified in the decree does not include them.

There are also some other observations near the close of the foregoing opinion which I think are not necessary to the consideration of the case. They relate to conditions which it is conceded do not exist at present and which may never arise in the future. I do not wish to express or concur in any view concerning them until they arise and are presented for judgment in the usual way.