## UNION PAC. R. CO. et al. v. MASON CITY & FT. DODGE R. CO.

(Circuit Court of Appeals, Eighth Circuit. December 1, 1908.)

No. 2,564.

1. RAILROADS (§ 51*)—JOINT USE OF TRACKS OF UNION PACIFIC AT OMAHA—CONSTRUCTION OF DECREE FOR.

By the decree of 1903 the court adjudged to the Mason City & Ft. Dodge Railroad Company and to its lessee, the Chicago Great Western Railway Company, for reasonable compensation, the joint and equal use of the main and passing tracks of the Union Pacific Railroad Company from their eastern terminus in Council Bluffs to a connection with the Union Stockyards Railroad and the other railroads connecting with the Union Pacific Railroad at or near South Omaha, of the latter's bridge across the Missouri river, and of the connections of its tracks with the tracks of the Union Stockyards and with the tracks of all other railways which were then, or might thereafter be, connected with the tracks of the Pacific Company at or near South Omaha, to the same extent stated in the contracts of the Pacific Company with the Rock Island Company, the St. Paul Company, and the Northwestern Company. There was no express limitation of this use in those contracts, or in the decree, to a use for the transportation of through cars moving across the river. The Mason City Company has a freightyard and a grainyard, which was constructed after the decree, in or near Omaha, its only access to which is over the tracks of the Pacific Company.

*Held:* The decree of 1903 adjudged to the Mason City Company the use of the tracks of the Pacific Company specified and of the connections of those tracks with other railroads at or near South Omaha and at Council Bluffs to move with its own engines from its railroad east of Council Bluffs cars destined to railroads south and west of Omaha connected with the tracks of the Pacific Company at or near South Omaha, and also to move with its own engines freight cars to and from its freightyard and grainyard in or near Omaha from and to other railroads connected at or near South Omaha and at Council Bluffs with the tracks of the Pacific Company specified in the decree, although such movements are not necessary to complete or to effect through transportation of such cars over the river.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 51.*]

JUDGMENT (§ 524*)—PRESUMPTION OF NO LIMITATION FROM ABSENCE OF EXPRESSED RESTRICTION.

The absence from a decree of any limitation or exception to general terms of plain significance raises a persuasive legal presumption that the court intended to make none.

[Ed. Note.—For other cases, see Judgment, Dec. Dig. § 524.*]

3. JUDGMENT (§ 524*)—MODIFICATION BY CONSTRUCTION—EVIDENCE TO WARRANT MUST BE CONCLUSIVE.

When the terms of a decree are plain and free from ambiguity, their ordinary meaning and effect may not be lawfully extended or contract-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ed by construction, in the absence of proof to a reasonable certainty that such was the purpose of the court, for the legal presumption is that the judge carefully expressed his deliberate intention therein.

[Ed. Note.—For other cases, see Judgment, Dec. Dig. § 524.*]

4. JUDGMENT (§ 713*)—CONCLUSIVE IN SECOND SUIT OF ALL MATTERS LITIGABLE IN FORMER SUIT.

In a second proceeding between the same parties or their privies upon the same cause of action, not only every matter offered, but every admissible matter which might have been offered, to sustain or defeat, in whole or in part, the cause of action, is rendered res adjudicata by the former decree upon the merits.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1241; Dec. Dig. § 713.*]

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the District of Nebraska.

See, also, 128 Fed. 230, 64 C. C. A. 348.

This appeal challenges a decree of the Circuit Court which adjudged the Union Pacific Railroad Company and three of its officers guilty of contempt and fined them for a violation of the decree rendered and the writ of injunction issued in August, 1903, in the case of the Mason City & Ft. Dodge Railroad Company against the Union Pacific Railroad Company. The decree of 1903 adjudged that the Mason City Company and its lessee, the Chicago Great Western Railway Company, were "admitted into the full, equal, and joint use of the main and passing tracks of the Union Pacific Railroad Company then located and established, or which might thereafter be located and established, from the eastern terminus of said tracks in Council Bluffs, in the state of Iowa, to a connection with the Union Stockyards Railroad and other railroads connecting with the Union Pacific Railroad at South Omaha in the state of Nebraska, including the bridge over which said tracks extend across the Missouri river between the cities of Council Bluffs, Iowa, and Omaha, Neb., * * * also the connections with the Union Stockyards in South Omaha, and with the tracks of all other railway companies which now or may be hereafter connected at or near South Omaha with the tracks of the Union Pacific Railroad Company hereinbefore described, each and all, to the same extent and upon the same terms and conditions stated in the contracts between the Union Pacific Railroad Company and the Chicago & Northwestern Railway Company, the Chicago, Milwaukee & St. Paul Railway Company, and the Chicago, Rock Island & Pacific Railway Company"; and it enjoined the Union Pacific Railroad Company, its officers and servants, "from interfering in any way with said full, equal, and joint use of said property as aforesaid by the complainant, its successors, lessees, and assigns, and the right to make said connections as aforesaid."

The western terminus of the Mason City Railroad is at Council Bluffs, but it has a freightyard and railroad tracks therein near Twentieth street in Omaha, and these tracks are connected with the main track of the Union Pacific Railroad which extends from Omaha to South Omaha. Southwest of this freightyard, between it and South Omaha, adjoining the right of way of the Union Pacific Company, the Mason City Company has a large freightyard and many railroad tracks for the handling of grain. These tracks are connected with the main track of the Union Pacific Company which extends from Omaha to South Omaha, and in this yard the Mason City Company has constructed a large grain elevator. This elevator has been constructed and the yard has been equipped and connected with Union Pacific tracks since the decree of 1903. For convenience it will be called the "grainyard." The only method of communication by rail that the Mason City Company and its lessee have between their main line at Council Bluffs and this freightyard and this grainyard in Omaha and between those yards and the Union Stockyards, and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the railroads from the West and South which connect with the Union Pacific tracks at South Omaha, is by way of the main track and the passing tracks of the Union Pacific Company. The Chicago, Rock Island & Pacific Railroad Company has a line of railroad from Chicago to Council Bluffs and from Denver to South Omaha, but it uses the main and passing tracks of the Union Pacific Company to conduct its trains from South Omaha to Council Bluffs, and vice versa. About a mile west of South Omaha the tracks of the Rock Island Company have a physical connection with the tracks of the Union Pacific Company.

The act which the court below held to be a violation of the decree and of the injunction was the prevention by the Union Pacific Company and its officers of the use by the Great Western Company, the lessee of the Mason City Company, of this connection for the purpose of drawing with one of its engines a car load of stucco, which was consigned to the Rock Island Company, from the Union Pacific tracks over this connection in order to deliver it to that company.

N. H. Loomis (John N. Baldwin and Edson Rich, on the brief), for appellants.

Frank B. Kellogg and W. D. McHugh (Cordenio A. Severance, on the brief), for appellee.

Before SANBORN and HOOK, Circuit Judges, and AMIDON, District Judge.

SANBORN, Circuit Judge (after stating the facts as above). Counsel for the appellants base their contention that the court below was in error in its ruling in this case upon two propositions. They insist that the Great Western Company had no right under the decree of 1903 to deliver through cars or trains from its line at Council Bluffs to the Rock Island Company at South Omaha over the Pacific Company's connection with that company at that place. Their second proposition is that the Great Western Company had no right to transfer cars to the Rock Island Company with its own engines over this connection except for the purpose of completing the through passage of such cars from its line in Council Bluffs to the Rock Island Company at South Omaha, and this (1) because no such right was contemplated or secured by the decree, (2) because the use of the tracks and connections of the Union Pacific Company for such a purpose would cause great congestion of traffic on its tracks in Omaha and would disable it from fairly discharging its duty to the public, and (3) because the extent of the Great Western Company's rights are measured by those of the Rock Island Company and those of the contract tenants of the Pacific Company, who had no such rights.

The argument of counsel in support of their first proposition is that Congress in the passage of the acts of July 25, 1866, c. 246, 14 Stat. 244, and of February 24, 1871, c. 67, 16 Stat. 430, did not contemplate or intend to require the Pacific Company to permit the use of its tracks by other railroad companies to effect an actual interchange of cars and business between the latter, and that the true meaning and effect of the decree of August, 1903, was not to permit the Mason City Company to use the connections of the Pacific Company's tracks with other railroads reaching them from the West, but merely to allow that company to make and use a physical connection of its tracks with those of the Union Pacific Company at Council Bluffs, and to

leave it and its lessee, the Great Western Company, without right to transfer its cars or trains over the connections of the Union Pacific tracks with other railroads. In support of these views, they cite Atchison, Topeka & Santa Fé R. Co. v. Denver & N. O. R. Co., 110 U. S. 667, 4 Sup. Ct. 185, 28 L. Ed. 291, in which the Supreme Court decided that the declaration of the Constitution of the state of Colorado that every railroad company should have the right with its road to intersect, connect with, or cross any other railroad meant that such company should have the right to make the appropriate physical connections of the railroads, and not that it must stop its trains and exchange business with every road at every such connection on the same terms that it made with other roads at other connections. They also call attention to Altoona & P. Connecting R. Co. v. Beech Creek R. Co., 177 Pa. 443, 35 Atl. 734, in which the Supreme Court of Pennsylvania held that under a statute which gave railroad companies the right to "connect their roads with roads of a similar character, and authorized a jury to fix the terms of the connection in case the companies disagreed, the jurisdiction was limited to prescribing the place and manner of the connection, and did not extend to the transfer of a part of one company's road to another company, or to the management of its stations or of its land or water privileges." But these decisions are not persuasive, because they do not treat of analogous cases. They construe a Constitution and a statute which authorized the connection of railroad tracks of different companies, while the acts of Congress here involved and the decree thereunder authorize the use of the railroad tracks of one company by other companies upon payment of reasonable compensation.

The duty of the Union Pacific Company to permit the use of its main and passing tracks between Council Bluffs and South Omaha by the Great Western Railway Company was imposed upon it by Act July 25, 1866, c. 246, 14 Stat. 244, and Act Feb. 24, 1871, c. 67, 16 Stat. 430, and the character and limits of that duty were fixed by the decree of 1903. The Pacific Company has claimed from the beginning, and still insists, that it was neither empowered nor required by those acts, or by any other law, to permit any other company to move with the engines of the latter any cars or traffic over any of its railroad tracks, and it has always insisted that the contracts it made to that effect with the Rock Island Company and the St. Paul Company in 1890 and with the Northwestern Company in 1898 were beyond its corporate powers. These claims have been litigated at various times between 1891 and the present day, but no court has ever sustained them. We cannot hope, and shall not endeavor, to review and analyze the acts of 1866 and 1871 more perfectly or to portray more clearly their scope, object, and legal effect than has been repeatedly done by the Supreme Court and by this court. Union Pac. R. Co. v. Chicago, etc., R. Co., 163 U. S. 564, 16 Sup. Ct. 1173, 41 L. Ed. 265; Union Pac. R. Co. v. Chicago, R. I. & P. R. Co., 51 Fed. 309, 2 C. C. A. 174; Union Pacific R. Co. v. Mason City & Ft. Dodge R. Co., 199 U. S. 160, 26 Sup. Ct. 19, 50 L. Ed. 134; Id., 64 C. C. A. 348, 128 Fed. 230. Suffice it to say that the public policy which

inspired and the primary purpose of those acts were to bridge the gap in transportation by railroad between the western ends at Council Bluffs of railroads east of the Missouri river and the eastern ends at or near Omaha and South Omaha of railroads west of the Missouri river, that the method adopted to accomplish that purpose was to empower and require the Union Pacific Company to permit the use for reasonable compensation of their main and passing tracks across this gap by other railroad companies that owned railroads which extended to the gap for the purpose of drawing their trains and cars across it with their own engines, and this was the legal effect of that legislation.

When the Mason City Company, whose railroad extended from the East to Council Bluffs, applied for permission to use the tracks of the Union Pacific Company to haul its cars and trains from Council Bluffs to the railroads which terminated at South Omaha, the Pacific Company refused it, and after the Circuit Court entered the decree of 1903 that company strenuously contended in this court and in the Supreme Court that no duty to allow the use of its bridge or any of its tracks by other companies to move traffic with their engines was imposed upon it by the acts of Congress, and that if any such duty was created it did not require that company to permit such use of its tracks between Omaha and South Omaha southwest of Twentieth street. This court and the Supreme Court held otherwise, and affirmed the decree below. Did that decree empower the Mason City Company and its lessee, the Great Western Company, to haul a car or train consigned from its railroad east of Council Bluffs to the Rock Island Company west of South Omaha over the connection of the Union Pacific tracks with those of the Rock Island Company about a mile west of the stockyards at that place for the purpose of delivering that car or train to the latter company? The express adjudication of that decree is that the Mason City Company and its lessee are entitled to the full, equal, and joint use of the main and passing tracks of the Union Pacific Company from their eastern terminus in Council Bluffs "to a connection with the Union Stockyards Railway and the other railroads connecting with the Union Pacific Railroad at South Omaha, * * * also the connections with the Union Stockyards tracks in South Omaha and with the tracks of all other railroads which now or hereafter may be connected at or near South Omaha with the tracks of the Union Pacific Railroad Company" to the same extent stated in the contracts with the Rock Island Company, the St. Paul Company, and the Northwestern Company. The contract with the Rock Island Company made in 1890—and the others are similar—granted to that company the joint and equal use of the Pacific Company's main and passing tracks between the eastern terminus of such tracks in Council Bluffs and a line drawn at right angles across said tracks within 1½ miles southerly of its passenger station in Omaha, and the joint and equal use of its connections with the Union Stockyards tracks in South Omaha and conveniently located grounds in South Omaha on which the Rock Island Company might construct and maintain for its exclusive use tracks aggregating 3,000

feet in length. Now it is argued that while this decree and the contracts might have given other companies the right to draw their cars and trains destined to companies on the other side of the gap onto the tracks of the Pacific Company which spanned it, they gave no right to haul them off from those tracks over the connections of the tracks of the Pacific Company with the tracks of the companies to which the cars and trains were destined on the other side of the gap. But the main purpose of the acts of Congress, of the contracts, and of the decree was to bridge the gap, and this construction would defeat that purpose. It would stop the through transportation of other companies on the gap just as effectually as it was halted before upon the sides of it. This could not have been the intention of the Congress, or of the parties to the contracts, or of the Circuit Court which entered the decree. No discussion or argument could make more clear or certain than the terms of the contract and of the decree which have been cited the fact that their true meaning and effect were not thus limited. The contracts and the decree alike gave, upon the payment of fair compensation therefor, the joint and equal use with the Pacific Company of its connections of its main and passing tracks with the tracks of other companies at Council Bluffs, Omaha, and South Omaha from or to which the beneficiaries may desire to transfer trains or cars across the gap. The conclusion is that the acts of 1866 and 1871 imposed upon the Pacific Company the duty to permit the use by a railroad company, whose tracks were connected with its tracks at Council Bluffs, Omaha, or South Omaha, of the connections of its main and passing tracks between those cities with other railroads for the purpose of drawing from its own tracks and delivering over such connections with its own engines to such other railroads cars and trains destined across the river thereto, and the true meaning and legal effect of the decree of 1903 were that the Pacific Company owed that duty to the Mason City Company and its lessee, the Great Western Company, and that it should discharge it. The first proposition of counsel for the appellants cannot be sustained.

The second proposition is that the Mason City Company had no right to move cars with its own engines over the connection of the Union Pacific tracks with the tracks of the Rock Island Company at South Omaha, or from or to its freightyard and grainyard in Omaha, except to effect and complete a transfer of such cars across the gap between South Omaha and Council Bluffs; that it had no right to the use of this connection to exchange between other railroad companies cars which did not necessarily pass over the bridge in order to effect their trips. Upon its face the decree does not limit the use adjudged to the transfer of through cars or traffic. It grants a use joint and equal with that enjoyed by the Pacific Company itself, and that company undoubtedly had the right to use this connection to transfer cars to and from its yards that were not required to cross the river. It is argued that this apparent meaning of the words of the decree should be restricted by construction to the grant of a use for through traffic only because the primary purpose of the provisions of the acts of 1866 and 1871, which required the Pacific Company to allow this use, was to

accommodate through traffic across the river only, because the decree granted the use to the same extent that the contract tenants had it, and by the terms of their agreements, by custom, and by their contemporaneous construction those tenants had it for through traffic only, and because the use claimed would congest traffic and disable the Pacific Company from conducting its own business efficiently and from discharging its duty to the public.

It is true that the object of the requirement of the acts of Congress was to bridge the transportation gap and to facilitate the transfer of cars passing between railroads east and railroads west of the Missouri river, but this fact did not deprive the court which was called upon to enforce this legislation of its jurisdiction to prescribe the limits and the terms of the use which the Pacific Company should allow, nor of its power and duty to exercise a wide and wise judicial discretion in fixing those limits and terms. What those should be were questions necessarily involved in the suit which resulted in the decree of 1903. There was much more reason to contend that Congress did not intend to allow the use by other companies of the Pacific Company's tracks and connections south and west of Twentieth street, a use in no way indispensable to the transportation of cars across the river, than there is to argue that it did not purpose to permit the use of those tracks and connections by a company which already has the right to use them for through cars, to move cars to and from its yards in Omaha from and to other railroads with which those tracks connect. And yet the Supreme Court denied the former contention. The questions whether or not these acts of Congress authorize, and Congress intended, that the use now claimed should be permitted, was open to litigation, and was necessarily decided in the original suit, and it is too late for the parties to that litigation to debate that issue now, for in a second controversy between the same parties, or their privies, not only every matter offered, but every matter which might have been offered, to sustain or defeat, in whole or in part, the cause of action, is rendered res adjudicata upon the merits by the former judgment. Cromwell v. County of Sac, 94 U. S. 351, 352, 24 L. Ed. 195; Dickson v. Wilkinson, 3 How. 57, 61, 11 L. Ed. 491; Dimock v. Copper Co., 117 U. S. 559, 565, 6 Sup. Ct. 855, 29 L. Ed. 994; Commissioners v. Platt, 79 Fed. 567, 571, 572, 25 C. C. A. 87, 91, 92; St. Louis, K. C. & C. R. Co. v. Wabash R. Co., 152 Fed. 849, 861, 81 C. C. A. 643, 655.

The decree by its terms adjudges to the Mason City Company and its lessee, not the joint use of the Pacific Company's tracks and of its connection with the Rock Island Company in question for the transfer of through cars, but the unrestricted joint use thereof to the same extent that it was granted to the contract tenants. The agreements with those tenants have been searched in vain to find any such restriction. The contract with the Rock Island Company expressly grants to that corporation the joint and equal use with the Pacific Company of the latter's main and passing tracks from Council Bluffs to South Omaha, of its connection with its Union Depot tracks in Omaha, and of its connections with the Union Stockyards tracks in South Omaha and by necessary implication of its connections at Council Bluffs with the

Eastern Railroads. This agreement was made in 1890. Before the Mason City Company built in Omaha, after the decree of 1903, its grainyard, the contract tenants owned no yards in that city wherein cars could be conveniently exchanged with other companies. Through cars were exchanged with companies other than the Pacific Company at the poolyard owned by the Pacific Company in Council Bluffs and at the Union Stockyards in South Omaha without the use of the engines of the Pacific Company. Local Omaha freight cars were handled by the Pacific Company's engines because they were generally obtained from or delivered to shippers on some of the spur or yard tracks of that company, and the contract tenants did not use their own engines for this purpose. Conceding that the custom had been that freight cars which did not cross the river should be exchanged between railroads in Omaha, and that local Omaha freight cars should be handled in that city by the engines of the Pacific Company, that the understanding between the contract tenants and the Pacific Company had been that transportation of this nature should be moved by the engines of the Pacific Company and not by the power of the tenants, and that the latter had never claimed the right to move it with their own engines over the Pacific Company's tracks and connections to their own or other roads, these facts do not establish a controlling contemporaneous construction that they had no right to receive from and deliver to other companies over these tracks and connections of the Pacific Company with their own engines cars destined to and from their own yards in Omaha, because they had no such yards, and that question had never become an instant one. The evidence, therefore, fails to prove any custom regarding the question at issue or any contemporaneous construction of the contracts concerning it which ought to control their terms, and there is nothing in their terms which limits the use they grant to the transference of through cars only, nothing to overrule the ordinary meaning of the words of the contracts and of the decree. We turn back accordingly to the decree to seek the real intention of its maker, the court, the object of all construction of writings.

It is to be interpreted in the light of the rules and principles of equity and of the opinions of the courts upon which it was based. It may be best construed by placing ourselves as nearly as possible in the position of the court which rendered it at the time it framed it. That court could not have been blind on the one hand to the fact that the Pacific Company was charged with the duty of transporting its own passengers and freight over its bridge and its tracks at Council Bluffs, Omaha, and South Omaha; nor could the court have been blind on the other hand to the facts that every railroad company cannot have entrance to our great cities over tracks of its own; that the interest of the public, which in the end must pay for the use of railroads, and the interest of the railroad companies themselves, alike required that the transportation involved should be conducted with the least capital consistent with safe, prompt, and efficient service; and that, to the end that the multiplication of tracks and the increase of investments therein might be avoided, every railroad track in the three cities should be required to carry all the traffic that it could conveniently bear. St. Louis, Kansas City & C. R. Co. v. Wabash Railroad Company, 152 Fed.

849, 861, 862, 81 C. C. A. 643, 655, 656; Union Pacific Railway Co. v. Chicago, R. I. & P. R. Co., 51 Fed. 309, 369, 2 C. C. A. 174, 234; Central Trust Co. v. Wabash, St. L. & P. R. Co. (C. C.) 29 Fed. 558. In the light of these facts and rules of equity jurisprudence, the court rendered the decree of 1903, which grants the joint and equal use of the tracks of the Pacific Company and of their connections with the tracks of other railroads at Council Bluffs and at or near South Omaha, without any limitation of that use to the transportation of through traffic across the Missouri river; and the logical and legal conclusion is that the court intended to adjudge, and that the decree did adjudge, to the Mason City Company and to its lessee the right to use those tracks and connections to draw with its own engines cars from and to its freightyard and grainyard in Omaha to and from other railroads thus connected with the tracks of the Union Pacific Company, although such movements were not made for the purpose of effecting or completing the transportation of such cars across the Missouri river.

The absence from a decree of any limitation or exception to general terms of known significance raises a persuasive legal presumption that the court intended to make none. And, when the terms of a decree are plain and free from ambiguity, their ordinary meaning and effect may not be lawfully extended or contracted by construction, in the absence of proof to a reasonable certainty that such was the purpose of the court, for the legal presumption is that the judge carefully expressed his deliberate intention therein. St. Louis, K. C. & C. R. Co. v. Wabash R. Co., 152 Fed. 849, 852, 81 C. C. A. 643, 646.

Finally, counsel assert, and they have produced testimony to prove, that if the Mason City Company and its lessee, the Great Western Company, are permitted to make the use they here seek of the Pacific Company's tracks and connections with other railroads, those facilities will be so burdened that the latter company will be unable to conduct its own business conveniently and to discharge its duty to the public. If such will be the effect of this use, it was no justification of the violation of the decree and of the injunction. It will be soon enough to consider the effect of this expected overburdening when it becomes an actuality. There was no substantial evidence that any such use had overburdened these tracks or connections when the decree was rendered or when the Pacific Company and its officers disobeyed it.

There was no error in the proceedings in the court below, and the decree it rendered is affirmed.