## UNION PACIFIC RAILROAD COMPANY *v.* MASON CITY AND FORT DODGE RAILROAD COMPANY.

### APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 18.   Argued October 19 and 20, 1905.—Decided November 6, 1905.

A distinct ruling on any question fairly arising in a trial is not *obiter dictum*, and where the judgment rests upon two grounds, either being sufficient to sustain it, and the appellate court sustains it on both grounds, the ruling on neither is *obiter* but each is the ruling of the court and of equal validity with the other.

In construing an act of Congress granting permission to construct a bridge across a navigable river, the general policy of the Government to provide for the use of such a bridge, up to its reasonable capacity, by all connecting railroads on reasonable compensation to the owning company will be considered and accordingly so held in regard to the use by the Mason City Co. of the bridge across the Missouri River at Omaha, constructed under the act of 1871, 16 Stat. 430, and owned by the Union Pacific Railway.

In a great public enterprise such as the building of the Union Pacific Railroad under a Congressional charter reserving the right to alter, amend or repeal, public interests, and not simply private purposes are to be regarded, and the purchaser at judicial foreclosure sale takes the property subject to the proper regulations and use established by Congress, notwithstanding the mortgage foreclosed may have ante-dated the legislation.

Where the language of the decree of the Circuit Court is open to misconstruction it should be corrected by the Circuit Court itself.

ON a bill filed by the Mason City and Fort Dodge Railroad Company, (hereinafter called the Mason City Company,) the Circuit Court of the United States for the District of Nebraska entered a decree, August 19, 1903, 124 Fed. Rep. 409, requiring the Union Pacific Railroad Company (hereinafter called the Union Pacific Company) to let the plaintiff into the joint use of the railroad bridge between Omaha and Council Bluffs, and the approaches thereto. On appeal this decree was affirmed

by the Circuit Court of Appeals for the Eighth Circuit, February 29, 1904. 64 C. C. A. 348. Thereupon the Union Pacific Company appealed to this court.

*Mr. John N. Baldwin* and *Mr. Maxwell Evarts* for appellant:

No authority was conferred by the acts of Congress of July 1, 1862, July 2, 1864, July 25, 1866, and February 24, 1871, upon the Mason City & Fort Dodge Railroad Company to use the Missouri River bridge and the tracks of the appellant Union Pacific Railroad Company, and under no aspect of this case can this question, or any of the questions involved herein, be deemed to be disposed of by reason of the decision of this court in the case of *Union Pacific Ry. Co.* v. *Chicago, Rock Island & Pacific Ry. Co.*, 163 U. S. 564.

This is the first time the point has been heard on the merits. The references thereto in decisions in other cases have been purely *obiter dictum*. As to what is *obiter* see *Cohens* v. *Virginia*, 6 Wheat. 264, 399; *Harriman* v. *Northern Securities Co.*, 197 U. S. 244, 291.

That Congress did not intend to permit other railroads to use the bridge in question, and that no such meaning as is contended for by appellee is to be given to the act of 1871, appears from other Congressional railroad bridge acts, and in each and every instance when Congress intended that other roads should be allowed to use the bridge authorized to be constructed, it imposed this condition in clear, distinct and unambiguous terms.

The power to alter, amend and repeal the charter of the Union Pacific Railroad Company did not give Congress the power to take from the Railroad Company property acquired by it in the exercise of its franchises and corporate powers; and its roadbed and the use thereof west of 20th Street, Omaha, could not be taken from it and given to another under the guise of an amendment of its charter. *Sinking Fund Cases,* 99 U. S. 700, 720; *Re Parrott*, 1 Fed. Rep. 481, 491; *United*

*States* v. *Union Pacific,* 160 U. S. 1, 33; *Coast Line* v. *Savannah,* 30 Fed. Rep. 646, 650; *Detroit* v. *Plank Road,* 43 Michigan, 140, 147 and cases cited by Judge Cooley; *People* v. *O'Brien,* 111 N. Y. 1, 34; *Millar* v. *Railroad Co.,* 21 Barbour (N. Y.), 513; *Johnson* v. *Goodyear Co.,* 127 California, 4; *Orr* v. *Brackton County,* 81 Kentucky, 593.

The appellant under the foreclosure of the mortgage of March 1, 1865, acquired the properties of the old company free and clear of any lien, charge or duty, of or to the United States, under any act of Congress, except as specified in the decree of foreclosure. *Joy* v. *St. Louis,* 138 U. S. 1 and other cases cited by appellee do not apply but see *Toledo &c. R. R. Co.* v. *Hamilton,* 134 U. S. 296, 301; *Dunham* v. *Railway Co.* 1 Wall. 254; *Galveston Railroad Co.* v. *Cowdrey,* 11 Wall. 459; *Sullivan* v. *Railroad Co.,* 94 U. S. 806.

*Mr. Frank B. Kellogg, Mr. James M. Woolworth,* with whom *Mr. William D. McHugh* and *Mr. Cordenio A. Severance* were on the brief, for appellees:

Upon the facts the decree should be affirmed. It granted the Mason City Company the right to use the Union Pacific bridge, its approaches, depots and tracks connected therewith between the terminus of the Union Pacific road in Council Bluffs and South Omaha, being the same property used by the other railroad companies, for the purpose of connecting the lines of railroad reaching Council Bluffs on the east with the lines of railroad reaching Omaha on the west. *Union Pacific Railway Co.* v. *C., R. I. & P. R. R. Co.,* 163 U. S. 564; *S. C.,* 51 Fed. Rep. 309; *S. C.,* 47 Fed. Rep. 15; *Union Pacific* v. *Hall,* 91 U. S. 343; *United States* v. *Union Pacific,* 91 U. S. 72; *United States* v. *Union Pacific,* 117 U. S. 361; 14 Op. 232.

Appellant now claims that so much of the opinion in 51 Fed. Rep. as holds that the act of 1866 was adopted by and became a part of the Union Pacific bridge act of 1871, and thus imposed upon that company and its successors the obligation to allow all railroads, terminating at Council Bluffs

and South Omaha, the use of the bridge, tracks, and approaches, was *obiter dictum*, or was in error, or should be overruled.  This contention, however, cannot be upheld for the power to contract was expressly involved.  The judgment might be sustained upon either of two grounds or both.  It was sustained upon both.  Each question was involved; each debated, discussed and deliberately decided by the court.  Where an adjudication is placed upon two or more grounds, the decision of each will be held to be of binding force, and not *obiter*.  *Railway Co.* v. *Schutte*, 103 U. S. 118; *Alexander* v. *Worthington*, 5 Maryland, 489; *Jones* v. *Habersham*, 107 U. S. 179; *Bouchner* v. *C. M. & N. W. Ry.*, 60 Wisconsin, 264, 270, 273; Bouvier's Dictionary, Rawles Revision, 567, 569; *Becker* v. *Chester*, 91 N. W. Rep. 100; *Haws* v. *Contra Costa Water Co.*, 5 Sawyer, 287; *Brown* v. *C. & N. W. Ry.*, 102 Wisconsin, 137, 154.

The decision in the Rock Island case, construing the Union Pacific bridge act, became a rule of property governing the use of the bridge and tracks involved in this case, on which all parties have a right to rely, and it should not now be disturbed.  *Harris* v. *Jex*, 55 N. Y. 421; *Levy* v. *Nitsche*, 40 La. Ann. 500; *Minnesota Co.* v. *National Co.*, 3 Wall. 334; *Frank* v. *Evansville & I. R. Co.*, 111 Indiana, 132; *Hines* v. *Driver*, 89 Indiana, 342; *Paulson* v. *Portland*, 16 Oregon, 450; *Garth* v. *Arnold*, 115 Fed. Rep. 471.

The provisions of the act of 1866 were modified by the act of 1871.  Where a subsequent act necessarily modifies or changes a prior act, it is to be construed as an amendment, whether so designated in the act or not.  *Smails* v. *White*, 4 Nebraska, 357; *Sovereign* v. *State*, 7 Nebraska, 409; *In re McKeon's Estate*, 58 N. Y. Sup., 589; *Fussell* v. *Gregg*, 113 U. S. 550; *United States* v. *Freeman*, 3 Howard, 548; *Atkins* v. *Disintegrating Co.*, 18 Wall. 301; *State* v. *Gerhardt*, 33 L. R. A. 313, 322.

The decree of foreclosure did not cut out the rights of the public and of other railroad companies to run their trains over

the bridge and its approaches, and the present company did not purchase under that decree the property free and clear of any of the provisions of the obligations imposed by the act of Congress. *Credits Co.* v. *United States,* 177 U. S. 311. Congress had the right under the reserved powers in the charter to regulate the manner of the use of the public highway for said public highway for reasonable compensation and that is what was done by this act. *Sinking Fund Cases,* 99 U. S. 700; *Canada Southern Railway* v. *International Bridge Co.,* 8 Fed. Rep. 192; *New York & New England Railroad Company* v. *Bristol,* 151 U. S. 567; *Tomlinson* v. *Jessup,* 15 Wall. 459; *Miller* v. *State,* 15 Wall. 498; *Railroad Company* v. *Maine,* 96 U. S. 510; *Pearsall* v. *Great Northern Railway,* 161 U. S. 646, 656.

It was a mere regulation of the use; and by taking the property under foreclosure it took it burdened with all of the easements to the full extent. *Lake Erie & Western Ry. Co.* v. *Priest,* 131 Indiana, 413; *Midland Ry. Co.* v. *Fisher,* 125 Indiana, 19; *Central Trust Co.* v. *Kneeland,* 138 U. S. 414; *St. Joseph &c. Co.* v. *Chicago, &c. Co.,* 89 Fed. Rep. 648. *Harris* v. *Youngstown Bridge Co.,* 90 Fed. Rep. 328; *Fosdick* v. *Schall* 99 U. S. 251; *United States* v. *New Orleans Railway,* 12 Wall. 362; *Bear Lake Irrigation Co.* v. *Garland,* 164 U. S. 16; *Northern Pacific* v. *Townsend,* 190 U. S. 267.

MR. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

The Mason City Company contends that its right to the use of the bridge and approaches was determined by the decision of this court in *Union Pacific Railway Company et al* v. *Chicago &c., Railway Company,* 163 U. S. 564. And further, that if mistaken in this contention it has that right under the statutes of the United States, and by the terms of a contract between the Union Pacific Railroad Company, on the one hand, and the city of Omaha and County of Douglass, Nebraska, on the

other. The case in 163 U. S. arose on two contracts, one between the Union Pacific Railway Company and the Chicago, Rock Island and Pacific Railway Company, and the other between the first named company and the Chicago, Milwaukee and St. Paul Railway Company. The opinion of the Circuit Court, 47 Fed. Rep. 15, considered only the contracts, sustained them, and entered a decree for the plaintiffs, awarding the joint use of the bridge and its approaches. That decree was affirmed by the Circuit Court of Appeals, 2 C. C. A. 174, and the case was thereupon brought on appeal to this court. Here the decision was rested not simply on the contracts but also on an obligation held to have been imposed on the defendant by the statutes of the United States, the court saying (p. 586):

"For the provisions of the Pacific Railroad acts relating to the bridge over the Missouri River, its construction and operation, imposed on the Pacific Company the duty of permitting the Rock Island Company to run its engines, cars and trains over the bridge and the tracks between Council Bluffs and Omaha, and we think that South Omaha was included."

This was followed by several paragraphs pointing out the statutes imposing the duty. Counsel for the Union Pacific Company in the case at bar earnestly contend that so much of that opinion, as referred to this statutory obligation, was *obiter dictum*, that the statutes were misconstrued, and also that the status of the present Union Pacific Company differs so much from that of the then defendant as to make the ruling inapplicable.

We are unable to yield our assent to these contentions. While the claim of the plaintiffs in that case was founded directly upon contracts, yet if there were a statutory duty to let them into the joint use of the bridge and its approaches that was enough to sustain a decree in their favor, and the contracts might be regarded as simply relieving the court of the work of settling minor matters, such as method of use, compensation therefor, and matter of control. Indeed, the alleged invalidity of the contracts was rested largely on the scope of the statutes,

and the duties to the Government and the public imposed
thereby on the railroad company. Of course, where there are
two grounds, upon either of which the judgment of the trial
court can be rested, and the appellate court sustains both, the
ruling on neither is *obiter*, but each is the judgment of the court
and of equal validity with the other. Whenever a question
fairly arises in the course of a trial, and there is a distinct de-
cision of that question, the ruling of the court in respect thereto
can, in no just sense, be called mere dictum. *Railroad Com-
panies* v. *Schutte*, 103 U. S. 118, in which this court said (p. 143):

"It cannot be said that a case is not authority on one point
because, although that point was properly presented and de-
cided in the regular course of the consideration of the cause,
something else was found in the end which disposed of the
whole matter. Here the precise question was properly pre-
sented, fully argued and elaborately considered in the opinion.
The decision on this question was as much a part of the judg-
ment of the court as was that on any other of the several mat-
ters on which the case as a whole depended."

Further, we see no reason to question the conclusion an-
nounced in the former opinion. Chap. 67 of the Laws of Con-
gress, 1871, 16 Stat. 430, granting power to issue bonds for the
construction of the bridge, provided that "for the use and
protection of said bridge and property, the Union Pacific Rail-
way Company shall be empowered, governed, and limited by
the provisions of the act entitled 'An act to authorize the
construction of certain bridges, and to establish them as post
roads,' approved July twenty-five, eighteen hundred and sixty-
six, so far as the same is applicable thereto."

The act referred to in this quotation (14 Stat. 244) author-
ized the construction of nine bridges, as to the first of which
(a bridge across the Mississippi River at Quincy) it was stated
that "when constructed all trains of all roads terminating at
said river, at or opposite said point, shall be allowed to cross
said bridge for reasonable compensation, to be made to the
owners of said bridge."

To the seven provided for by succeeding sections authority is granted "upon the same terms, in the same manner, under the same restrictions, and with the same privileges as is provided for in this act in relation to the bridge at Quincy, Illinois."

The remaining one of the nine bridges (that over the Mississippi River at St. Louis) was to be constructed by the St. Louis and Illinois Bridge Company, "subject to all the conditions contained in said act of incorporation and amendments thereto, and not inconsistent with the following terms and provisions contained in this act."

It is insisted that the act of 1871 makes applicable to the Omaha bridge only the two or three provisions in the act of 1866 common to all the bridges named therein, and as the section authorizing the bridge at St. Louis contained no direction for its use by terminating railroads, that requirement, although imposed on all the other bridges, was not brought into the act of 1871, and is inapplicable to the Omaha bridge. Counsel for the Union Pacific Company have also called our attention to a few statutes authorizing the construction of bridges which contain no provision in respect to use by other railroad companies. As against this, counsel for the Mason City Company have cited over 350 acts, to be found in the several statutes of Congress, from the fifteenth to the thirty-second volume, in each of which there is a direction for use by other companies. Obviously, that was the general policy of Congress, and the few exceptions thereto were dictated by the peculiar circumstances of the cases.

Bearing in mind this general policy of the Government, we think it a fair construction of the act of 1871 that incorporating, as it did, the provisions of the act of 1866, it must have intended to incorporate not merely those in terms applied to all the bridges, but also one in harmony with that general policy and applied to substantially all, and this, although in reference to a single bridge, other and special directions were made. Aside, therefore, from any reliance upon the doctrine of *stare decisis*, the act of 1871 must be considered as requiring the

Union Pacific Company to permit the trains of all roads terminating at the Missouri River at Omaha to use its bridge up to the fair limits of capacity, and on payment of reasonable compensation.

It may be remarked in passing that it is expressly conceded in this case by the Union Pacific Company ·that there is no question of the reasonableness of the compensation ·tendered, or the capacity of the bridge and approaches for the service asked by the Mason City Company.

The final question is this: Is the status of the present Union Pacific Railroad Company, the appellant, so different from that of the company to which it is a successor as to render inapplicable the decision in the Rock Island case and to nullify the requirements of the act of 1871?

What are the facts? The acts of Congress, July 1, 1862, 12 Stat. 489; July 2, 1864, 13 Stat. 356, creating the Union Pacific Railroad Company, authorized it to mortgage its road for $16,000 a mile, (increased to $48,000 a mile in the mountainous districts), and loaned the credit of the United States for an equal amount, secured by a second lien on the property. The initial point of the main line of the Pacific Railroad was fixed on the Iowa bank of the Missouri River opposite the city of Omaha. *Union Pacific Railroad Company* v. *Hall et al.*, 91 U. S. 343. On March 1, 1865, the Union Pacific Railroad Company executed its first mortgage, conveying its entire line from the western boundary of the State of Iowa to its western terminus. This mortgage in terms included the road "heretofore constructed or hereafter to be constructed." The act of 1871 authorized a mortgage of not exceeding two and a half million of dollars to raise money for the construction of the bridge. This mortgage was executed, the money raised and the bridge built. The act of 1862, section 18, provided that "the better to accomplish the object of this act, namely, to promote the public interest and welfare by the construction of said railroad and telegraph line, . . . ·Congress may, at any time, having due regard for the rights of said companies

named herein, add to, alter, amend, or repeal this act." The act of 1864, which was an amendment of the act of 1862, in section 22 preserved the right of Congress to at any time "alter, amend, or repeal this act." It also, in section 9, gave express authority to the company to maintain ferries or construct bridges over the Missouri River. The mortgage of 1865 was foreclosed, and the present appellant, the Union Pacific Company, a corporation organized under the laws of Utah, became the purchaser. The contention now is that as this mortgage antedated the act of 1871, the purchaser at the foreclosure thereof took the property freed from any burdens or obligations imposed by that act. It held the bridge as a part of its line, under no obligations to permit its use by any other company.

We shall not stop to inquire whether this foreclosure and sale was anything more than a reorganization under the form of a judicial proceeding, nor whether if it were in all respects a *bona fide* sale to an independent third party such sale took the property out of the jurisdiction of Congress, and prevented that body from further legislation in aid of the purpose of the act, "namely, to promote the public interest and welfare." The question before us is whether an amendment to the act purely administrative in the character of the burdens imposed, aimed to promote the public interest and welfare, enacted while the title to the property remained in the original company a corporation chartered by Congress, which preserves intact all the pecuniary rights of the company, and whose privileges are accepted and acted upon by the company, is denuded of vitality by a sale to a new company under foreclosure of a mortgage executed prior to such legislation. That question must be answered in the negative.

The first transcontinental railroad, to wit, the Union Pacific Railroad, was a great public undertaking. Private capital was believed to be and was, in fact, unwilling to attempt it. Congress felt that the public interest required its construction. It sought to interest private capital in the enterprise, and be-

lieved that the work could be better done through the instrumentality of a corporation. At the same time it became practically the sponsor for the enterprise by large donations of Government credit and public lands. In so doing it was not seeking to aid a purely private enterprise. What it did was in furtherance of the public interests, and it reserved to itself the right to alter, amend, or repeal the act in so far as was necessary to promote those interests, limiting its action by the single proviso that due regard must be had to the rights of the company. Every one who purchased the bonds of the company or gave it credit did so with full knowledge that this was a quasi-national enterprise, and that if deemed necessary by Congress the interests of the public might be promoted by additional legislation in so far as the pecuniary rights of the company and its creditors were not sacrificed. The construction of the bridge, doing away as it did with the delay and annoyance of transportation across the river by a ferry, added largely not merely to the value of the entire property, but also to the great convenience of the traveling and shipping public. The act giving authority for a large issue of bonds, thereby insuring the immediate construction of the bridge, was accompanied by a proviso that upon reasonable compensation the use of the bridge should be accorded to other companies. Availing itself of the privileges conferred the company accepted the amendment in its entirety and is bound by its terms as fully as though it had embodied them in a contract. So long as the full facilities of the Union Pacific Company were not interfered with thereby, and a reasonable compensation was paid therefor, it cannot in any just sense be held that its rights were not duly regarded. And it cannot be tolerated that a private individual or a state corporation can, by the purchase at a judicial sale of the property, strike down all the legislation of Congress passed subsequently to the mortgage for the promotion of the public interests. We cannot assent to the contention that the present owner of the property holds it free from obedience to all such legislation. Now, as before

the foreclosure and sale, the public interests are to be regarded, and not simply private purposes, wishes or prejudices.

One thing more requires notice. It is contended that the terms of the decree are too broad; that they give to the Mason City Company not merely the use of the bridge and its approaches, including therein connections with western roads terminating at Omaha, but also the use of all side or spur tracks connecting the Union Pacific Railroad with private industries, and the track extending northward from the main line of the Union Pacific to the old ferry crossing. On the argument counsel for the appellee stated that his company made no claim to a right to use these tracks. If the language of the decree is open to this misconstruction it should be corrected, and the Circuit Court may make such correction on proper application.

*Decree affirmed.*

MR. JUSTICE MCKENNA took no part in the decision of this case.