JUSTICE BURKE, concurring in part and dissenting in part: I agree with the majority that summary dismissal of defendant’s pro se postconviction petition was proper. I disagree, however, with the majority’s conclusion that defendant’s consecutive sentences are not void. In the case at bar, defendant was sentenced to one term of natural life and a consecutive term of 10 years in prison. On appeal, defendant argues that his consecutive sentences are void under People v. Palmer, 218 Ill. 2d 148 (2006), and that his sentences should be concurrent. In Palmer, we reversed the circuit court’s imposition of the defendant’s consecutive natural-life sentences and modified the sentences to run concurrently. Palmer, 218 Ill. 2d at 169-70. We offered two reasons for doing so. First, we held that, because defendant was sentenced under the Habitual Criminal Act (720 ILCS 5/33B — 1 (West 2002)), he was not subject to consecutive sentencing. Palmer, 218 Ill. 2d at 163. Second, and “more importantly,” we held that it was impossible to serve consecutive natural-life sentences, “both according to natural law and within the plain meaning of the ‘consecutive’ sentencing law, section 5 — 8—4(a).” Palmer, 218 Ill. 2d at 164. Because of the relevance of this second, alternative holding to the present case, I quote our discussion in Palmer at length: “Perhaps more importantly, we recognize the impossibility of serving consecutive natural-life sentences both according to natural law and within the plain meaning of the ‘consecutive’ sentencing law, section 5 — 8—4(a). 730 ILCS 5/5 — 8—4(a) (West 2002). This impossibility is based on the critical distinction between a term of natural-life imprisonment and that of a term of years, namely, the particular sentences’ potential for release of defendant. Unlike a term of years, the Code provides that ‘[n]o person serving a term of natural life imprisonment may be paroled or released except through executive clemency.’ 730 ILCS 5/3 — 3—3(d) (West 2002). With the unavailability of parole or release for defendant in mind, we examine section 5 — 8—4(a) of the Code (730 ILCS 5/5 — 8—4(a) (West 2002)). It provides: ‘Concurrent and Consecutive Terms of Imprisonment. (a) When multiple sentences of imprisonment are imposed on a defendant at the same time, *** the sentences shall run concurrently or consecutively as determined by the court. *** The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless: (i) one of the offenses for which defendant was convicted was first degree murder or a Class X or Class 1 felony and the defendant inflicted severe bodily injury, *** * * * in which event the court shall enter sentences to run consecutively.[’] 730 ILCS 5/5 — 8— 4(a)(i) (West 2002). All of the offenses committed by defendant were Class X offenses, and there is no dispute that defendant inflicted severe bodily injury to both M.J. and D.J. However, we hold that section 5 — 8—4(a) does not apply here, based on the plain meaning of the word ‘consecutive.’ The necessity of this holding is foreshadowed in our case law. Previous judicial pronouncements have failed to acknowledge the impossibility of serving and enforcing sentences consecutive to death or life without parole. *** * * * Here, we attempt to relieve this judicial uneasiness by acknowledging the elephant in the room and the plain meaning of the word ‘consecutive.’ ‘Consecutive’ has been defined as ‘following esp. in a series: one right after the other often with small intervening intervals.’ Webster’s Third New International Dictionary 482 (1993). Additionally, ‘consecutive sentences’ are ‘[t]wo or more sentences of jail time to be served in sequence. For example, if a defendant receives consecutive sentences of 20 years and five years, the total amount of jail time is 25 years.’ Black’s Law Dictionary 1393-94 (8th ed. 2004). It belabors the obvious to state that at the conclusion of a defendant’s first natural-life sentence, his life is over. Further, the Department of Corrections cannot enforce an order imposing another natural-life sentence consecutive to it. Thus, consecutive natural-life sentences cannot follow in a series right after one another. Defendant cannot serve two natural-life sentences in sequence, nor will the total amount of two or more natural-life sentences ever be more than defendant’s one life. There is only one way in which a defendant can serve the sentences, with his one life. Therefore, the sentences may not be consecutive, but must be concurrent because concurrent sentences are sentences which operate simultaneously. Black’s Law Dictionary 1393 (8th ed. 2004). * * * *** We explicitly find, as these aforementioned courts also did implicitly, that defendant’s actual sentence is governed by the laws of nature, regardless of whether a trial judge imposes his sentence consecutively or concurrently. Because defendant may only serve these sentences concurrently, we reverse the circuit court’s imposition of consecutive natural-life sentences on the five remaining convictions. Accordingly, under Supreme Court Rule 615(b)(4) [citation], we change the defendant’s sentence to five concurrent sentences of natural-life imprisonment.” (Emphasis added.) Palmer, 218 Ill. 2d at 164-65, 167-68, 169-70. Our holding in Palmer regarding the plain meaning of the word “consecutive” applies to defendant’s consecutive sentences here. Just as it was impossible for the defendant in Palmer to serve more than one consecutive natural-life term, so too is it impossible for defendant to serve a term of years consecutively to a term of natural life. Further, as the majority acknowledges, a sentence which is in conflict with statutory guidelines is void and may be challenged at any time. 237 Ill. 2d at 504, citing Palmer, 218 Ill. 2d at 163. Thus the appellate court in this case erred when it concluded that defendant’s sentences were not void. Nevertheless, the majority finds that “defendant’s reliance on Palmer is misplaced.” 237 Ill. 2d at 504. The majority states that Palmer “stands simply for the proposition that defendants sentenced to natural life in prison under the Habitual Criminal Act are not subject to the consecutive-sentencing provisions of the Unified Code of Corrections.” 237 Ill. 2d at 504. Because the defendant in the instant case was not sentenced under the Habitual Criminal Act, the majority concludes, “Palmer’s prohibition on consecutive sentencing has no application to this case.” 237 Ill. 2d at 504. The majority reaches this result by reading out of Palmer our holding regarding the plain meaning of the word “consecutive.” The majority finds that, once the Palmer court declared that the defendant was not eligible for consecutive sentencing because he was sentenced under the Habitual Criminal Act, anything the court “went on to say about the impossibility of serving consecutive natural-life sentences could in no way affect the outcome of that case” and, thus, was “not essential to the disposition of the cause.” 237 Ill. 2d at 505. From this, the majority concludes that our holding in Palmer regarding the plain meaning of the word “consecutive” was “advisory.” 237 Ill. 2d at 505. In the majority’s view, our holding was not truly a holding, but was something less: a “ ‘holding’ ” with quotation marks around the word.[2] It was, in short, a “mistake.” 237 Ill. 2d at 505. The majority’s conclusion that our holding in Palmer regarding the plain meaning of the word “consecutive” was a “mistake” because it was “not essential to the disposition of the cause” (237 Ill. 2d at 505) is illogical. Consider what would occur if either one of the two alternative holdings were removed from Palmer. Under either holding standing alone, the defendant could not receive consecutive natural-life sentences. Because either holding may be removed from Palmer without affecting the result, neither holding is “essential to the disposition of the cause.” Both holdings, therefore, are “mistakes” if the majority’s reasoning is applied. This cannot be correct. Further, what if the order in which the holdings appeared in Palmer had been reversed? If such were the case, under the majority’s reasoning, one would be forced to conclude that Palmer’s holding about the impossibility of serving consecutive natural-life sentences was the only holding, and the finding that the defendant was not statutorily eligible for consecutive sentencing under the Habitual Criminal Act was a “mistake” because it was not “essential” to our decision. Surely, the precedential value of holdings in an opinion should not depend on the order in which they happen to be arranged. The fact is that neither of our alternative holdings in Palmer was “advisory” or a “mistake.” This is a black letter rule of appellate law. As the United States Supreme Court has explained: “But it is urged that what we have described as ruled [in a previous case] was obiter dictum and should be disregarded, because the Court there gave a second ground for its decision which was broad enough to sustain it independently of the first ground. The premise of the contention is right but the conclusion is wrong; for where there are two grounds, upon either of which an appellate court may rest its decision, and it adopts both, ‘the ruling on neither is obiter, but each is the judgment of the court and of equal validity with the other.’ ” United States v. Title Insurance & Trust Co., 265 U.S. 472, 486, 68 L. Ed. 1110, 1114, 44 S. Ct. 621, 623 (1924), quoting Union Pacific R.R. Co. v. Mason City & Fort Dodge R.R. Co., 199 U.S. 160, 166, 50 L. Ed. 134, 137, 26 S. Ct. 19, 20 (1905). We recently reaffirmed this rule ourselves, in Lebron v. Gottlieb Memorial Hospital, 237 Ill. 2d 217, 236 (2010), citing Woods v. Interstate Realty Co., 337 U.S. 535, 537, 93 L. Ed. 1524, 1526, 69 S. Ct. 1235, 1237 (1949) (“where a decision rests on two or more grounds, none can be relegated to the category of obiter dictum”). To be sure, there is always a measure of judicial discretion that is exercised when drafting a judicial opinion and, during the drafting process, judges may disagree over whether to include one or more alternative holdings. However, once an issue is considered by the court and an alternative holding is rendered, it is binding law. The holding cannot subsequently be evaded by calling it “advisory” or “not essential” or a “mistake.” This is particularly true here, where the holding which the majority wishes to circumvent was not only expressly denominated as a holding by this court but was labeled the “more important” of the holdings in the case. Finally, the majority fails to justify or even acknowledge the sweeping scope of its decision: every alternative holding that is second in sequence, in every opinion filed by a court in this state, has now been declared “advisory” and a “mistake” because it is “not essential to the disposition of the cause.” 237 Ill. 2d at 505. This is a highly destabilizing ruling which will cause no end of confusion. There is no justification for this result. After concluding that Palmer’s holding regarding the plain meaning of the word “consecutive” was a “mistake” because it was “not essential,” the majority then goes on to offer an alternative reason for rejecting that holding: it was “incorrect on the merits” and therefore not subject to the constraints of stare decisis. 237 Ill. 2d at 505-06. Of course, this second, alternative rationale is not essential to the majority’s decision in this case. It is therefore “advisory,” a “mistake,” and may be disregarded on this ground alone.[3] Moreover, the majority’s conclusion that Palmer’s holding with respect to the plain meaning of the word “consecutive” is not subject to the constraints of stare decisis is incorrect. “The doctrine of stare decisis ‘ “expresses the policy of the courts to stand by precedents and not to disturb settled points.” ’ People v. Caballes, 221 Ill. 2d 282, 313 (2006), quoting Neff v. George, 364 Ill. 306, 308-09 (1936), overruled on other grounds by Tuthill v. Rendelman, 387 Ill. 321 (1944). In other words, ‘ “a question once deliberately examined and decided should be considered as settled and closed to further argument” ’ (Wakulich v. Mraz, 203 Ill. 2d 223, 230 (2003), quoting Prall v. Burckhartt, 299 Ill. 19, 41 (1921)), so that the law will not change erratically, but will develop in a principled, intelligible fashion (People v. Mitchell, 189 Ill. 2d 312, 338 (2000)).” People v. Colon, 225 Ill. 2d 125, 145-46 (2007). While the doctrine of stare decisis is not absolute, any departure from prior decisions must be “ ‘specially justified.’ ” People v. Suarez, 224 Ill. 2d 37, 50 (2007), quoting People v. Sharpe, 216 Ill. 2d 481, 520 (2005). Prior decisions may be overturned “only on the showing of good cause.” Heimgaertner v. Benjamin Electric Manufacturing Co., 6 Ill. 2d 152, 167 (1955); Colon, 225 Ill. 2d at 146. In this case, the majority identifies two reasons that it believes constitute good cause for overturning Palmer. First, the majority states that, in Palmer, this court “expressed its disapproval” of a sentencing scheme that results in sentences that cannot actually be served. 237 Ill. 2d at 506. This was error, the majority concludes, because “[t]he legislature has determined that the imposition of consecutive natural-life sentences serves a legitimate public policy goal, and even if its effect is purely symbolic, it is within the purview of the legislature to make that determination.” 237 Ill. 2d at 506. The majority mischaracterizes Palmer. The court in Palmer did not “express its disapproval” of a sentencing scheme as if it were engaged in a dispute with the legislature over a question of public policy. Rather, as the lengthy quotation set forth above makes clear, the court attempted to discern legislative intent by applying a plain-language analysis to the consecutive-sentencing statute. Citing to Webster’s and Black’s Law Dictionary, the court concluded that the word “consecutive” means to follow in a series, one right after the other. The court then took judicial notice of a fact of natural law: human beings only have one life. Given the plain meaning of the word “consecutive,” and given that the General Assembly was undoubtedly aware of human mortality when drafting the Code, the court in Palmer concluded that the legislature could not have intended for the consecutive sentencing scheme to apply when a defendant receives a natural-life sentence. Whether one agrees with this analysis or not, it cannot now be dismissed as nothing more than an “expression of disapproval” of a policy decision. Further, the point raised by the majority here — that the legislature intended to allow the imposition of consecutive natural-life sentences — is the identical argument made by the dissenting justices in Palmer. See Palmer, 218 Ill. 2d at 174 (Garman, J., concurring in part and dissenting in part, joined by Thomas, C.J., and Karmeier, J.) (“The legislature has apparently determined that the imposition of consecutive life sentences is meaningful, if only symbolically, and this court must give effect to the legislature’s clear intent”). To hold that the dissent’s reasoning in Palmer now constitutes good cause for overruling that decision is directly at odds with the principle that “ ‘a question once deliberately examined and decided should be considered as settled and closed to further argument.’ ” Wakulich v. Mraz, 203 Ill. 2d 223, 230 (2003), quoting Prall v. Burckhartt, 299 Ill. 19, 41 (1921); see also People v. Lopez, 207 Ill. 2d 449, 459 (2003) (this court “ ‘will not depart from precedent “merely because the court is of the opinion that it might decide otherwise were the question a new one” ’ ”), quoting People v. Robinson, 187 Ill. 2d 461, 464 (1999). Indeed, by holding that the same reasoning found in the dissent in Palmer provides good cause for overruling the decision, the majority openly invites litigants to repeatedly reargue points that have been expressly rejected by this court. The majority also concludes that good cause exists to overrule Palmer because this court “neither intended nor envisioned” that its holding regarding the plain meaning of the word “consecutive” would be applied to a natural-life sentence consecutively to a term of years. 237 Ill. 2d at 506. The problem with this reasoning is that the majority does not support it with anything that was actually said in Palmer. The majority makes no attempt to distinguish Palmer from this case and, thus, concedes that the language and reasoning in Palmer do, in fact, apply to a natural-life sentence consecutive to a term of years. Accordingly, when the majority now states that the court in Palmer did not intend for its holding to apply to a natural-life sentence consecutive to a term of years, the majority is saying: “We did not mean what our words in Palmer actually say.” This is plainly inappropriate. What this court “intends or envisions” is found in the words contained in our opinions. If this court can simply state, after an opinion is filed, that the words in the opinion do not mean what they say — that there is another intention behind the words, unknown to the public — then we should not bother to write opinions. The majority’s determination that we may disregard Palmer by baldly asserting “that’s not what we meant” — without ever bothering to examine the actual language of the opinion — is not only contrary to the doctrine of stare decisis, but undermines the rule of law itself. Moreover, consider the nature of the two reasons offered by the majority for overruling Palmer-. “The dissent was right” and “We did not mean what we said.” These rationales can be applied to every decision of this court in which a dissent has been filed. Again, this is completely contrary to the doctrine of stare decisis, which requires something different, some “special justification,” for overturning a prior decision of this court. Suarez, 224 Ill. 2d at 50. Justice Freeman, specially concurring, also attempts to justify overturning Palmer. The special concurrence reads Palmer as having announced a broad, free-standing rule, requiring that “all consecutive sentences imposed must be assessed by reviewing courts to ensure that they are consistent with the laws of nature.” 237 Ill. 2d at 511 (Freeman, J., specially concurring). According to the special concurrence, this broad ruling was error, and Palmer “should never have invoked the ‘laws of nature’ to decide what was a fairly routine case of statutory interpretation.” 237 Ill. 2d at 511-12 (Freeman, J., specially concurring). Thus, in the view of the special concurrence, Palmer was badly reasoned, and good cause exists to depart from the principles of stare decisis. 237 Ill. 2d at 512 (Freeman, J., specially concurring). Like the majority, the special concurrence mischaracterizes Palmer. The holding of Palmer was expressly stated: “[W]e hold that section 5 — 8—4(a) does not apply here, based on the plain meaning of the word ‘consecutive.’ ” Palmer, 218 Ill. 2d at 165. See also Palmer, 218 Ill. 2d at 167 (“Here, we attempt to relieve this judicial uneasiness by acknowledging the elephant in the room and the plain meaning of the word ‘consecutive’ ”); Palmer, 218 Ill. 2d at 166 (noting that previous decisions have not “mentioned the plain meaning of the word ‘consecutive’ and the impossibility of serving any term of years consecutive to a death sentence”). As noted, the court in Palmer determined that the plain and ordinary meaning of the word “consecutive” means to follow in a series, one right after the other. Palmer then took judicial notice of one — and only one— law, or fact, of nature: that human beings have just one life. Palmer, 218 Ill. 2d at 167 (“It belabors the obvious to state that at the conclusion of a defendant’s first natural-life sentence, his life is over”). It is, of course, not possible for a defendant to serve a “consecutive” sentence, in the plain and ordinary meaning of that word, once the defendant is dead. Accordingly, given the plain meaning of the word “consecutive,” Palmer concluded that the General Assembly could not have intended for the consecutive sentencing scheme to apply to a defendant who receives a natural-life sentence. The dissenting justices in Palmer disagreed with this conclusion, but not because they disputed the plain meaning of the word consecutive. Rather, according to the dissenting justices, the controlling indication of legislative intent was found in the language of section 5 — 8—4(a), which states that the sentences for certain “triggering” felonies must be served consecutively when severe bodily injury is inflicted. Based on this language, the dissenting justices concluded “[t]he legislature has apparently determined that the imposition of consecutive life sentences is meaningful, if only symbolically, and this court must give effect to the legislature’s clear intent.” Palmer, 218 Ill. 2d at 174 (Garman, J., concurring in part and dissenting in part, joined by Thomas, C.J., and Karmeier, J.). Palmer thus involved nothing more than a disagreement over legislative intent. The majority in Palmer found the controlling indication of legislative intent in the plain meaning of the word consecutive, while the dissenting justices found it in other language in the statute. Whatever one’s view of this disagreement and the Palmer majority’s position in it, the decision in Palmer was clearly not, as the special concurrence states, an announcement of some type of broad, free-standing rule of “natural law.” The special concurrence’s mischaracterization of Palmer leads to further error. According to the special concurrence, Palmer must be overturned because, “[b]y introducing the concept of natural law to consecutive and concurrent sentences in such expansive terms, [the court], in essence, isolated [its] decision from legislative correction.” 237 Ill. 2d at 512 (Freeman, J., specially concurring). In the view of the special concurrence, the legislature “could never trump a ruling based on natural law” and, thus, the court in Palmer placed its decision “beyond the mere actions of the General Assembly” to respond to in any manner. 237 Ill. 2d at 512 (Freeman, J., specially concurring). In this way, according to the special concurrence, the court exceeded its proper institutional role. Again, the decision in Palmer was expressly based on the legislature’s intent, as found in the plain and ordinary meaning of the word “consecutive.” Palmer, 218 Ill. 2d at 165 (“we hold that section 5 — 8—4(a) does not apply here, based on the plain meaning of the word ‘consecutive’ ”). What this means is that the decision in Palmer was not based on some “higher power” (237 Ill. 2d at 512 (Freeman, J., specially concurring)) that precludes legislative action. If the legislature desired, it could alter, via statute, the definition of the word “consecutive” and declare that it is the public policy of this state to allow consecutive natural-life sentences. If it did so, then the logic of Palmer would no longer apply. Thus, contrary to the special concurrence’s assertions, the court in Palmer in no way overstepped its bounds or in some manner “isolated [its] decision from legislative correction.” 237 Ill. 2d at 512 (Freeman, J., specially concurring). The fact that the court must labor so hard to find reasons for overturning Palmer points to one conclusion: there is no justification for overturning it. The holding in Palmer, though disagreed with by members of the court, rested on a conventional plain-meaning analysis of the word “consecutive,” coupled with judicial notice of an indisputable fact: human mortality. There has been no subsequent legislative activity, such as a change to the definition of the word “consecutive,” that would call Palmer’s determination of legislative intent into question. Nor has there been any confusion in applying Palmer, as even the State has conceded that it applies to a natural-life sentence consecutive to a term of years. See People v. Dixon, 366 Ill. App. 3d 848, 856 (2006). Indeed, the only reason the present case is before us is not because there is any disagreement as to whether Palmer applies to a natural-life sentence consecutive to a term of years, but because the appellate court held that defendant had forfeited his Palmer argument. And even this point is hardly a source of confusion, as the majority correctly rejects the appellate court’s holding in four sentences. 237 Ill. 2d at 503-04. “Once a majority of this court has established a principle of law, stare decisis dictates that the principle should not be disregarded simply because some members of the court disagree or have changed their minds.” People v. Fuller, 187 Ill. 2d 1, 23 (1999) (Bilandic, J., dissenting); People v. Mitchell, 189 Ill. 2d 312, 338 (2000). The majority’s decision to overrule Palmer disregards this principle and reduces the doctrine of stare decisis to “nothing more than a pious cliche.” People v. Lewis, 88 Ill. 2d 129, 167 (1981) (Ryan, J., concurring). Accordingly, I would modify defendant’s consecutive sentences to run concurrently. Statements in a judicial opinion that are something less than a holding are, of course, dicta. Thus, although the majority avoids using the word, it is clear that the majority views our discussion in Palmer regarding the plain meaning of the word “consecutive” as dicta. That the majority fails to apply its “alternative-holdings-area-mistake” rule in the very opinion in which it is adopted is a further indication that the rule is unwise.